## ADELIA J. FRANCIS AND ANOTHER v. THEODORE B. ANDERSON, d.b.a. ANDERSON TRUCKING COMPANY, AND ANOTHER.

95 N. W. (2d) 79.

February 20, 1959—Nos. 37,325, 37,326.

*Elmer Wiblishauser,* for appellants.
*McGuigan & McGuigan,* for respondents.

KNUTSON, JUSTICE.

These are appeals from an order denying plaintiffs' motion for a new trial.

Originally, separate actions were commenced by Adelia J. Francis, to recover for personal injuries, and Henry J. Francis, to recover damages to his automobile and medical and hospital expenses for his wife resulting from a collision between plaintiffs' automobile and a truck. The actions were consolidated for trial and have been consolidated here. They involve the same question so they will be considered as one case.

In these actions plaintiffs allege that the automobile owned by Henry J. Francis, and driven by Adelia J. Francis, was struck by a truck owned by defendant Theodore B. Anderson, doing business as Anderson Trucking Company, and driven by defendant Vernon M. Anderson at the time of the alleged collision. The collision is alleged to have occurred on March 23, 1956, on Trunk Highway No. 13, a short distance south of what is known as Happy Hollow Bridge or the First Bridge. At the close of all the evidence the trial court directed verdicts for defendants on the ground that the evidence as presented left "little more than pure conjecture and speculation upon which to base a finding that it was defendant's truck that was [involved] in the accident in question."

Plaintiffs thereafter moved for a new trial on the ground that the court erred in directing a verdict. The only question before us on this appeal is whether the evidence presented a fact question for the jury's determination.

The rules governing directed verdicts have been repeated so often that it seems useless to again repeat them here.[1]

In passing upon such motion the entire evidence must be taken into

---

[1]See, 19 Dunnell, Dig. (3 ed.) § 9764.

consideration. Where there is conflicting evidence, some of which supports a verdict and some of which negates the facts upon which it must rest, the court must accept the credibility of the evidence in favor of the verdict, and, if that, standing alone, would be sufficient to sustain a verdict, then it is improper to direct a contrary verdict.

In Hanson v. Homeland Ins. Co. 232 Minn. 403, 404, 45 N. W. (2d) 637, 638, we said:

"It is elementary that a motion for a directed verdict, which by its very nature accepts the view of the *entire* evidence most favorable to the adverse party and admits the credibility (except in extreme cases) of the evidence in his favor and all reasonable inferences to be drawn therefrom, should be granted only in those unequivocal cases where (1) *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case. * * * The application of this rule gives rise to much misunderstanding when the significance of the phrase 'in the light of the evidence *as a whole'* is overlooked. The propriety of the court's action is not to be tested by a scrutiny and a consideration of only that part of the evidence which is favorable to a contrary verdict. In other words, if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary. Not every conflict in evidence gives birth to a jury question."

Before a contrary verdict may be directed under the above rule it must appear that the evidence against a verdict overwhelmingly preponderates over that which favors a verdict. Where there is evidence against a verdict for a plaintiff, which the jury may disbelieve, a contrary verdict may not be directed if the evidence in favor of a verdict would have been sufficient except for such evidence against it. In Kundiger v. Prudential Ins. Co. 219 Minn. 25, 28, 17 N. W. (2d) 49, 51, we said:

"* * * The 'test is not whether the court might in the exercise of

its discretion grant a new trial,' but whether 'it would be its manifest duty to set aside a contrary verdict.' Applequist v. Oliver I. Min. Co. 209 Minn. [230] 235, 296 N. W. [13] 15, * * *. 'Manifest duty to set aside a verdict' involves no discretion, no weighing of testimony, nor passing upon the credibility of witnesses, except in those extreme cases 'where the evidence is "so overwhelmingly on one side as to leave no room to doubt what the fact is." ' Brulla v. Cassady, 206 Minn. [398] 410, 289 N. W. [404] 410, * * *."

In the final analysis, it is for the jury to determine from all the evidence whether the alleged facts exist. If there is evidence from which an inference of negligence may be drawn, even though some evidence must be discarded in order to do so, then a fact question usually exists for the jury's determination. The rule stated in Hanson v. Homeland Ins. Co. *supra,* can be applied only when it can be said as a matter of law that the evidence against a verdict preponderates over that which favors a verdict to such an extent that reasonable persons could not differ.[2]

■ Applying these rules to the facts in this case, the question arises whether the evidence which negates the fact that defendants' truck was involved in this automobile accident overwhelmingly preponderates over that from which the jury could infer that defendants' truck was involved.

In support of an inference that defendants' truck was involved in the collision, we may accept the following facts as being within the permissible range of findings which might be made by the jury.

Plaintiff Adelia J. Francis left her home on March 23, 1956, driving her husband's car, a 1952 Buick, to her work. She traveled on Highway No. 13 south toward Mendota and proceeded downhill after having passed the cross street of Annapolis. She then noticed through her rearview mirror that a truck was following her, proceeding in the same direction as she was traveling. The truck was approximately four car lengths behind her car when she first observed it. She then reduced her speed to about 20 miles per hour and kept to the right side of the highway. At the bottom of the hill she approached a concrete bridge, known as First Bridge or sometimes as Happy Hollow Bridge. At this

---

[2]See, Van Tassel v. Patterson, 235 Minn. 152, 50 N. W. (2d) 113.

point she increased her speed to 30 miles per hour, and, as she passed over the bridge, she again observed the truck following her, then about one and one-half car lengths behind her. The highway at this point is straight and level and about 20 feet wide, with a posted speed limit of 40 miles per hour.

After proceeding about a block beyond the bridge, Mrs. Francis observed the truck to be about 7 feet behind her. Believing that the driver of the truck was about to pass, she pulled over to the right side of the highway about a foot farther than she had been traveling. She then noticed that the truck was only a few inches from her bumper and it continued to follow her very closely for about half a block. She observed that the hood of the truck was red. Soon thereafter the right side of the bumper of the truck struck the rear left section of her car, pushing it ahead and to the right about 2½ feet. Immediately after this impact, the truck passed her car, and at this point Mrs. Francis and the driver of the truck looked at each other. She observed that he wore a hat high on his forehead; that he wore glasses having a dark heavy top; that he was light complexioned; that he was heavy set; and that he wore a dark overcoat or dark jacket. She also observed that he was middle aged. After passing her car, the truck cut short in front of her and she believed that he was going to stop. When she noticed that the driver of the truck had no intention of stopping, she stopped her car and wrote down the license number of the truck, which she said she had observed and had repeated to herself over and over again. The license number which plaintiff observed and wrote on a slip of paper was Y 57305.

Mrs. Francis testified that after writing down the number she sat in her car for 5 or 6 minutes because she felt ill. She then got out of the car and observed the damage to her vehicle, after which she drove farther south on Highway No. 13 past the plant of the Shiely company, which she thought might be the destination of the truck which had struck her car. She did not notice the truck at the Shiely plant and proceeded down the highway to the intersection of Lexington Avenue and was about to turn onto Lexington Avenue when she noticed a truck coming from the opposite direction. She recognized the truck and the driver as the one that had struck her. After the truck had

passed her, going in the opposite direction, she turned around and observed the license number, which she said was the same as that which she had jotted down at the time of the accident. Mrs. Francis then turned her car around in the opposite direction and proceeded back to the Shiely plant in the hope of finding the truck there. She did not see the truck, so she proceeded on her way to her home.

Upon arriving home, Mrs. Francis informed her husband of what had occurred, and he called the sheriff at Hastings (the accident having occurred in Dakota County) and gave him the license number which Mrs. Francis had written down. The sheriff went to the Shiely plant to investigate and interviewed defendants Theodore B. Anderson and Vernon M. Anderson. On March 24, Theodore B. Anderson went to plaintiffs' home. He then asserted that he understood that one of his trucks had been involved in an accident with Mrs. Francis. She told him that she had obtained the license number of the truck and a description of the driver and then described the driver to Theodore, who said nothing in reply.

On March 25, 1956, defendant Vernon M. Anderson came to plaintiffs' home, at which time he said that he was sorry that he had hit plaintiffs' car and that he did not know why he had done so but that he was sick at the time. He asked plaintiffs not to press charges against him because he would lose his driver's license and would have to go to work in the pit. He offered to settle the damages or costs for $100, which plaintiffs refused.[3]

Henry Francis corroborated much of the testimony of his wife. In addition, he testified that he and the deputy sheriff visited the Shiely plant to look at a truck owned by defendant Theodore B. Anderson. He observed a green smear of paint on the right side edge of the bumper. The smear appeared to him to be fresh and bright as if it had been caused recently. At his suggestion, the deputy sheriff took samples of the black paint on the truck bumper. Henry Francis testified that, in answer to the deputy sheriff's question put to Theodore B. Anderson as to whether he was positive that Vernon was involved in the accident, Theodore answered "Well, I suppose so."

---

[3]This evidence was admitted without objection.

The deputy sheriff then returned to plaintiffs' home, where he took samples of the black paint from the damaged portion of plaintiffs' car. These samples were sent to the Minnesota State Bureau of Criminal Apprehension Laboratory for analysis. Anthony Longhetti, a laboratory analyst employed there, testified that he had conducted tests for the purpose of comparing the two black paint samples which had been submitted to him. It was his opinion that—

"All these properties which were compared between the two paint samples were found to be similar. That is, there exists a good or high probability of common origin between the two paint fragments or paint scrapings."

He was of the further opinion that "the odds are extremely high that it did come from the specific origin."

If the case had rested at this point there can be little question but that the evidence presented a jury question as to whether it was defendants' truck which was involved in the accident. However, on cross-examination Mrs. Francis testified that she had no doubt in her mind that the license number she wrote down on a piece of paper was the license number of the truck that hit her. Defendants called as a witness a supervisor in the motor vehicle division of the office of the secretary of state, who testified that license No. Y 57305 was the registration number of a 1956 International truck owned by Lindberg Implement Company of Starbuck, Minnesota, as of November 16, 1955, and that it had been transferred to Kenneth Johnsrud of Starbuck, Minnesota, as of November 15, 1956. As of the date of this accident, March 23, 1956, the truck bearing license No. Y 57305 appeared in the office of the motor vehicle division to be owned by Lindberg Implement Company of Starbuck, Minnesota.

It was later shown that a truck owned by defendant Theodore B. Anderson, which had been inspected by the deputy sheriff and Henry Francis and from which the paint samples had been taken, bore license No. Y 57035. In other words, the license number which Mrs. Francis claimed she had written down at the time of the accident and the license number of a truck owned by Theodore B. Anderson contained the same numerals, but the 30 in the license number which Mrs. Francis

claimed to have taken from the truck was transposed to 03 on the license actually carried by the truck which plaintiffs now claim struck Mrs. Francis.

On this state of the record, the court granted defendants' motion largely on the proposition that the testimony of Mrs. Francis that she had taken down the license number of the truck and the testimony of Theodore B. Anderson that he owned no truck containing that license number was so conclusive that to permit the jury to pass on the question of identity and ownership of the truck which plaintiffs claim was involved in this accident would leave the matter entirely in the field of conjecture and speculation.

We are of the opinion that on all the evidence in the case there was a question of fact for the jury's determination. At best, Mrs. Francis had only a short interval of time in which to observe the license number on the truck. She had been struck and was feeling ill after the accident. The error in the transposition of the two numbers is a mistake which the jury could find could easily have been made under the circumstances. Why plaintiffs did not investigate the matter more thoroughly and ascertain that Theodore B. Anderson owned no truck bearing the license number which Mrs. Francis says she wrote on a piece of paper, prior to trial or during the trial, and at least after it appeared from defendants' testimony what the situation actually was, is something it is hard for us to understand. At least, when the employee of the motor vehicle division testified as to ownership of the truck bearing the license number which Mrs. Francis claims she observed and wrote down, it would seem that ordinary prudence would have required some kind of investigation. However, be that as it may, we think that it was for the jury to resolve the facts. It must have been evident to everyone that Mrs. Francis was mistaken as to the number she wrote down after the accident.

Plaintiffs, on their motion for a new trial, now assign as one of the grounds newly discovered evidence, consisting of an affidavit of F. W. Lindberg of Starbuck, Minnesota, in which he states that he owned an International pickup truck at the date of this accident and that the truck had not been out of the locality of Starbuck or in the area where

this accident occurred at or prior to the time of this accident. There is also an affidavit by Kenneth L. Johnsrud of Starbuck that he purchased this truck in the fall of 1956 and that the license number of the truck for the early part of 1956 was Y 57305. Of course, it is elementary that these affidavits furnished no basis for a new trial. This evidence could have been ascertained as easily prior to the trial, or at least during the trial, as it could subsequent to the trial. Absolutely no excuse is offered for not so discovering the evidence prior to trial.

We are of the opinion that it was error to direct a verdict, and for that reason there must be a new trial.

Reversed.