## WALTER LENZ v. ROBERT JOHNSON AND OTHERS.

122 N. W. (2d) 96.

May 24, 1963—No. 38,833.

*Robert Bakke,* for appellant.

*Meagher, Geer, Markham & Anderson, M. J. Coyne,* and *O. C. Adamson II,* for respondents Johnson.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for respondent Turnquist.

*Richards, Montgomery, Cobb & Bassford* and *Lynn G. Truesdell III,* for respondent Geier.

ROGOSHESKE, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial.

Plaintiff's suit for personal injuries is based upon claims of negligence asserted against the operators of two motor vehicles. When plaintiff had presented his case in chief with respect to the issue of liability, the court granted a dismissal of plaintiff's action and subsequently denied his

motion for a new trial. The question presented is whether the evidence could support a finding of negligence.

The essential facts established by the evidence, which we view most favorably to the plaintiff, are without substantial dispute. At about 4 p. m. on June 25, 1959, plaintiff, a state highway maintenance employee, was engaged with a fellow employee, Edwin Luedke, in spreading gravel on the south shoulder of U. S. Highway No. 12 on a curve about one mile west of Maple Plain. This paved highway extends in a general east-west direction and, at this point, there is a sweeping curve to the north which extends northeasterly, from an intersection described as the Armstrong intersection, to a railroad underpass. Midway on the curve there are guardrail posts located on the south shoulder about 9 feet from the south edge of the pavement and spaced 10 feet apart. A connecting cable about 18 inches from the ground extends from post to post. The two men were working about 20 to 30 feet east of the most western guardrail post, in the vicinity of the second to the fourth post. The gravel was dumped upon the shoulder, starting at the second post for a distance of 40 to 50 feet, between the edge of the pavement and the guardrail, from the full width of the bed of a dump truck operated by the foreman of this highway crew. After the gravel was so placed, plaintiff and his coworker began to level the gravel with shovels while the foreman drove the empty truck easterly toward the underpass to turn around.

About this time defendant Robert Johnson, an employee of defendant Johnson & Sons, Inc., was driving an automobile owned by defendant Ralph Turnquist and was approaching the workmen from the west. At about the same time, defendant John R. Geier was approaching from the east, having just passed through the railroad underpass. Each driver observed the other and both observed the two workmen.

Defendant Johnson, who was thoroughly familiar with the highway, testified that he was then about 300 feet away and that he was unable to determine whether the workmen were on the roadway or on the shoulder. Although it had been raining previous to this time, and the highway surface was wet and somewhat slippery, the visibility was good. However, his view was sufficiently distorted by the curve so that he was

unable to ascertain the exact position of the workmen. He assumed that they might be on the highway and determined that he should slow down. He applied his brakes to reduce his speed, skidded slightly, and deliberately placed his right wheels on the south shoulder of the roadway to gain traction. He was then about 200 feet west of the first guardrail post. He continued driving on the south shoulder of the highway toward the workmen, and when he was about 30 to 40 feet west of the guardrail, he applied his brakes and came to a full stop a short distance from the first post. As defendant Johnson was approaching, plaintiff was standing between the first and second guardrail posts, and his fellow workman, Luedke, was between the third and fourth posts.

Luedke, an unimpeached eyewitness to the entire accident, testified that he saw the Johnson vehicle approaching about 150 to 200 feet away and saw it start off the pavement and onto the south shoulder when it was a little better than 100 feet west and that it appeared to be weaving. He thought it was going between 55 and 60 miles per hour before it was driven partly on the shoulder. Thereafter, he testified, "it slowed down quite a bit" and it had just about come to a stop when plaintiff jumped onto the highway from a point between the first and second posts of the guardrail. He was struck by the right front end of defendant Geier's automobile and tossed upward, coming down on the right fender and rolling into the ditch. Luedke further testified that defendant Johnson stopped slowly, not abruptly, with the front of his vehicle coming to rest about 25 to 30 feet from the place where plaintiff was standing before he jumped.

The plaintiff's movement from the shoulder consisted of two jumps, the first causing him to land on the highway and the second causing him to make contact with defendant Geier's automobile. The point of impact was near the northern edge of the highway in the westbound lane of travel, defendant Geier's vehicle skidding a total distance of approximately 85 feet and the contact being made while his car was skidding.

Defendant Geier first saw the Johnson automobile when he was about 600 feet east of the workmen. Since it appeared to him that both automobiles were about the same distance from the workmen and traveling about the same speed (40 to 50 miles per hour), he concluded that the automobiles would meet abreast of the workmen and reduced his speed.

He then saw Johnson pull onto the shoulder and slow down. While he is not certain that Johnson stopped, Geier did testify that plaintiff was not in a position of peril when he jumped. Geier further testified that his speed was greatly reduced when, with about 30 feet separating them, plaintiff unexpectedly bounded across the road directly in his path. Although he immediately applied his brakes, contact was inevitable.

Luedke's testimony corroborated this account of Geier's conduct. The foreman, who passed Geier earlier, estimated Geier's speed at that time to be about 40 to 45 miles per hour and testified that he "wasn't going too fast."

Plaintiff testified that he saw the Johnson vehicle 300 to 350 feet away and it seemed to be coming quite fast. He watched it approach, turning momentarily to the east to determine the position of his fellow worker when Johnson was about 175 to 200 feet distant. Thereafter, when he turned back to look, he testified that "he was right on top of me, just coming right at me," and again, "it was off of the pavement swerving kind of with the back end off and the front end coming right at me." This is the last he remembers, recalling nothing that happened thereafter until he was lying in the ditch on the north side of the highway. He made no estimate of speed or of the position of the vehicle when he last remembers seeing it. There was testimony that he was thrown 15 feet into the air and 65 feet toward the northwest into the ditch. Plaintiff suffered serious personal injuries.

At the conclusion of the testimony and following assurance by the plaintiff that he had completed his case concerning liability, all defendants joined in a motion for dismissal on the grounds that plaintiff failed to prove actionable negligence on the part of either driver and that the evidence conclusively established that the plaintiff was guilty of contributory negligence. The court granted the motion, holding that there was no actionable negligence proven against any defendant and finding that neither driver had violated any of the laws of the road or failed to exercise due care in the operation of his vehicle.

We must be mindful in this case of the settled rule that the mere occasion of injury does not in itself support an inference of negligence.[1]

[1] 13B Dunnell, Dig. (3 ed.) § 7042.

While we are troubled by not finding a satisfactory explanation in the testimony for the unusual actions of plaintiff in jumping into the path of the Geier vehicle, short of concluding that he was then devoid of any rational judgment, our emphasis must be placed on searching the record to find some conduct on the part of either or both drivers upon which a jury could base a finding of negligence. We must ask ourselves: What did each driver do, or fail to do, which could constitute a violation of any duty, statutory or otherwise, owed by each to plaintiff under the circumstances?

We unhesitatingly agree with the decision of the trial court in dismissing the action against defendant Geier. The testimony of Luedke, foreman Bartel, and Geier himself is unanimous and clear concerning his exercise of due care with respect to lookout, control, and speed immediately prior to this accident; and reasonable minds functioning judicially could not find that his conduct, when confronted with the emergency occasioned by plaintiff's unexpected jump into the path of his vehicle, evinced a lack of due care in failing to anticipate and avoid the consequences of plaintiff's actions.

The most plausible claim of negligence against Johnson—apart from lookout, control, and speed—is that he operated his vehicle in such a manner as to create a misleading situation which precipitated a reasonable belief in plaintiff's mind that he was in a position of peril. With the exception of plaintiff's declarations, the testimony is unanimous that, while Johnson's conduct may not have been at all times understandable to onlookers, with respect to lookout, control, and speed, it met the standard of due care for the safety of the workmen, taking into account the dangers to be reasonably apprehended under all of the circumstances, and was in compliance with all of the applicable provisions of the Highway Traffic Regulation Act. Defendant Johnson's declared reason for driving partly upon the shoulder was to assure better traction. It is significant that if due care required a stop, absent an emergency, the traffic code prohibited stopping on the improved portion of the highway.[2] The statements of plaintiff that the Johnson vehicle was "coming quite fast," and that it was "swerving kind of," and that "he

---

[2] Minn. St. 169.32.

was right on top of me," which we assume are subjectively true, are not alone sufficient to support a reasonable inference that defendant Johnson was speeding or that his vehicle was improperly controlled. Such an inference would be as unreasonable as an inference of negligence from the mere fact of injury. These declarations, as the fact of injury, must be supported by direct or circumstantial evidence that would support a finding that the driver was in fact driving at an excessive speed under the conditions and that he failed to see what he should have seen or to control his vehicle consistent with his duty to avoid frightening or misleading or injuring anyone who he could reasonably foresee might be endangered by his conduct. It is settled law that "[n]ot every conflict in the evidence gives birth to a jury question," and "if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary."[3]

The undisputed facts and the record as a whole, particularly the testimony of Luedke, an extraordinary eyewitness to the entire occurrence, are wholly inconsistent with the declarations of plaintiff.

We are persuaded that, viewing the entire evidence, we must conclude that defendant Johnson was driving at an appropriately reduced speed consistent with the weather and highway conditions as he approached a potentially dangerous situation. He did see the workmen and defendant Geier's automobile, and his conduct in controlling and finally stopping his vehicle before he reached the point abreast of the workmen gives unequivocal support to his oral declarations of his belief, his intentions, and his conduct. On this record, it appears that the force of plaintiff's argument points to a charge that this defendant was overcautious rather than negligent.

We are not unmindful that dismissing a case of this kind before all parties have rested involves the hazard of hasty judgment. Here we have the impression that the only remaining testimony to be offered would have concerned the issue of contributory negligence since, upon

---

[3]Hanson v. Homeland Ins. Co. of America, 232 Minn. 403, 405, 45 N. W. (2d) 637, 638.

inquiry, the trial court was assured by counsel that all available testimony on the issue of the negligence of defendants was concluded. When the testimony is closed and motions to dismiss or direct the verdict are presented, the trial judge must not suffer litigants to be put to the additional burden, expense, and uncertainty of submitting the case to a jury where he is convinced that the instructions, no matter how general in form, will not submit any factual disputes and he possesses an abiding conviction that he will be dutybound to set aside any verdict rendered against the movants.

For the court to hold in this case that the evidence as a whole created a jury issue simply because of the testimony of plaintiff and the fact of injury would be manifestly against the entire evidence, and a verdict against either, or both, of the defendants could not be upheld.

Affirmed.