JOHN DOWNEY, A MINOR, BY DOROTHEA DOWNEY,
HIS MOTHER AND NATURAL GUARDIAN, AND
ANOTHER v. GEORGE FREY AND ANOTHER.

130 N. W. (2d) 349.

July 31, 1964—No. 39,191.

*Lasley & Foster,* for appellants.

*Murnane, Murnane, Battis & deLambert* and *Robert W. Murnane,* for respondents.

NELSON, JUSTICE.

John Downey, a minor, by Dorothea Downey, his mother and natural guardian, and Mrs. Downey, individually, brought this action to recover damages for injury sustained by John in an accident in which he was struck by an automobile driven by defendant Richard Frey and owned by his father, defendant George Frey. The trial court directed a verdict in favor of plaintiffs on the issue of liability, submitting only the question of damages to the jury for its determination. Defendants appeal to this court from an order denying their alternative motions for judgment notwithstanding the verdict or for a new trial.

Two issues are presented on appeal—(1) whether the trial court erred in holding that defendant Richard Frey was negligent as a matter of law, and (2) whether it erred in holding that plaintiff John Downey was free from contributory negligence as a matter of law.

If all conflicts in the evidence are resolved in favor of the prevailing parties below, the pertinent facts appear to be as follows: The accident occurred about midnight on June 13, 1961, on Lincoln Avenue in St. Paul, between Pascal Avenue, intersecting to the east of the accident scene, and Saratoga Avenue to the west thereof. The area involved is residential and there are sidewalks on each side of Lincoln Avenue adjacent to boulevards lined with trees. There are six street-light standards spaced 100 feet apart on alternate sides of the street. The lamps in the standards are composed of plastic or frosted glass panels arranged hexagonally and each lamp gives approximately as much light as a 150-watt bulb.

John Downey, age 17, had driven his automobile to the home of a friend, Joe Scherer, whose home was the third house west of Pascal Avenue on the north side of Lincoln Avenue. Downey parked his car on the north side of Lincoln slightly to the east of the Scherer home

and went with Scherer in his car to visit a friend. When they returned later in the evening, other cars were parked on each side of the street. While Downey and Scherer were talking on the front steps of the Scherer home, four girls they knew drove up in a white convertible automobile and parked on the south side of Lincoln Avenue some 25 to 50 feet southwest of Downey's car, and the two boys walked over to talk with the girls. The boys stood next to the driver's side of the convertible on Lincoln. After a short time, Downey stated he was going home. After looking in both directions down Lincoln Avenue, he walked diagonally (northeasterly) toward his automobile. As he proceeded toward his car, another car, driven by defendant Richard Frey, turned east from Saratoga Avenue onto Lincoln Avenue. The low-beam headlights were lit on Frey's car, causing the street to be illuminated some 50 to 60 feet in front of his car. According to Frey, he saw the convertible and Scherer standing, with his elbows resting on the window ledge on its driver's side, from 6 to 10 car lengths away. He said that Scherer's back protruded into the street about 3 feet.

Frey stated that he passed the convertible at a speed of approximately 25 miles per hour. Scherer and the girls in the convertible estimated Frey's speed at 40 miles per hour. There is testimony that as Frey passed Scherer and the four girls, they joined in shouting, "Slow down." Downey was struck by the left front portion of Frey's car at a point near the left headlight. Frey acknowledged that the speed of his car had not decreased from the time it passed the convertible until it struck Downey. Frey said that he did not see Downey until after the impact, and Downey stated that he saw only a headlight beam an instant before being hit. The force of the impact caused Downey to be thrown onto the hood of the Frey car. He was first seen lying next to the north curb of Lincoln Avenue behind his parked car. There is a conflict in the testimony as to how far the Frey car traveled after the impact. Richard Frey stated that his car stopped within 30 feet after the impact. Another witness testified that the distance was 80 feet.

Frey testified that he was not distracted when he first saw the convertible and Scherer standing beside it. He further testified that in order to afford ample room to Scherer he steered his car so that the cen-

ter of the hood appeared to be in the middle of Lincoln Avenue. No direct evidence was produced by Frey with respect to where Downey was prior to the accident. Witnesses for Downey stated that Frey's car was in the north lane of Lincoln Avenue and that Downey was standing next to the driver's side of his parked car when he was struck. Scherer testified that it appeared almost as if the Frey car had struck the Downey car. Downey said that he was standing one foot from the door post of his car and was about to reach toward the door to open it when he heard Scherer and the girls in the convertible shout, "Slow down." As he looked over his shoulder "to see what it was," he was hit. Scherer testified that Downey was facing toward the north when struck by the Frey car.

It is the right and duty of a trial court in a civil action to direct a verdict for a party when it would obviously be its duty to set aside a verdict against him. A motion for a directed verdict accepts the view of the entire evidence most favorable to the adverse party and should be granted only in those unequivocal cases where, in the light of the evidence as a whole, it would be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence or contrary to the law applicable to the case.[1]

Applying the foregoing rule to the first issue before us—whether the trial court erred in finding Richard Frey to have been negligent as a matter of law—we reach the conclusion upon the record submitted that the trial court properly directed a verdict in favor of plaintiffs on this issue. The court's ruling that Frey was guilty of negligence as a matter of law finds ample support even in Frey's version of the accident, wherein he stated that he attained a speed of 25 miles per hour after turning onto Lincoln Avenue; that when 6 to 10 car lengths away he saw Scherer standing beside the parked convertible; that he was not distracted by Scherer's presence, and without reducing his speed drove ahead with at least the left half of his car in the north lane; that his headlights were sufficiently bright to illuminate a pedestrian in the

---

[1] See cases collected in 19 Dunnell, Dig. (3 ed.) § 9764, and 2 Youngquist & Blacik, Minnesota Rules Practice, pp. 507 to 509.

street at a minimum distance of 50 to 60 feet in front of his car; and that he never saw Downey until after the moment of impact.

We think the foregoing facts are such as would cause reasonable minds to agree that Frey clearly failed to exercise ordinary care under the circumstances. Frey did not reduce his speed on Lincoln Avenue, where vehicles were parked on both sides of the street. The uncontroverted testimony is that Downey walked across Lincoln at a normal gait and was present on the street in plain sight as Frey approached. Under the circumstances Frey was guilty of negligence as a matter of law.

■ Defendants' primary contention seems to be that the trial court erred in finding Downey free from contributory negligence as a matter of law. They argue that he was negligent as a matter of law and the court should have directed a verdict for them on this issue or at the very least should have submitted the question of his negligence to the jury.

We think that the determining factor in establishing the correctness of the trial court's ruling with respect to Downey's conduct is his position in the street when he was hit by the Frey car.

Aide v. Taylor, 214 Minn. 212, 7 N. W. (2d) 757, 145 A. L. R. 530, involved a pedestrian's contributory negligence at a time when he was struck by an automobile traveling on the wrong side of the street. This court said (214 Minn. 219, 7 N.. W. [2d] 761):

"Contributory negligence, like negligence, is the failure to exercise due care to guard against harm reasonably foreseen or anticipated. Here, plaintiff had no actual knowledge that defendant was driving on the west side of the street, nor of the peril to which such driving exposed him. To hold plaintiff guilty of contributory negligence, it would be necessary to impute to him as a matter of law knowledge that defendant was driving on the wrong side of the street upon the hypothesis that it was plaintiff's duty to look to his right as well as to his left or, in lieu thereof, be charged with the knowledge which looking would have afforded him. Such is not the law. The roadway being of sufficient width, it was defendant's duty to keep upon the right half. * * * Ordinarily, a person may assume that another will

obey the law and perform his duty. A pedestrian is not guilty of contributory negligence as a matter of law for failure to look for an automobile approaching on the wrong side of the street, because ordinarily he has no reason to foresee or to anticipate danger from that direction."

Accordingly, the question in the instant case is whether Downey should have discovered the approaching automobile under the circumstances and gotten out of its path. Whether he should have is entirely dependent upon Downey's location on the street and we think that the trial court correctly determined that issue as a matter of law.

Frey's testimony that his car was in the middle of the street would place Downey near the center of Lincoln Avenue when the accident occurred. Frey first testified that the left side of his car was 4 or 5 feet from the automobiles parked on the north side of Lincoln Avenue when he hit Downey, later stating that his car was proceeding down the middle of the street. The latter contention would lead to the inference that Downey must have been standing about 2 feet north of the centerline of the street since the Frey car was approximately 6 feet wide and Downey was struck by the left front fender at a point near the headlight. We think it clear, from a careful reading of the record, that the overwhelming preponderance of the evidence establishes that Downey was struck while he was standing right next to the driver's side of his car and was about to reach out to open the car door. His testimony to that effect coincides with Scherer's statement that it appeared almost as though Frey's car hit Downey's car. Two of the girls in the convertible said that Downey was beside his car. The other two girls did not watch Downey walk all the way across the street, but one testified that he had reached the middle of the street when her attention was directed to the approaching car.

As was said in Lenz v. Johnson, 265 Minn. 421, 426, 122 N. W. (2d) 96, 99:

"* * * It is settled law that '[n]ot every conflict in the evidence gives birth to a jury question,' and 'if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of

law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary.' "[2]

It is our view that the overwhelming preponderance of the evidence in this case leaves no doubt that Downey was standing beside his parked car when hit. This being so, our decision in the Aide case is controlling and clearly warrants a directed verdict in favor of Downey on the issue of his contributory negligence.

When Downey reached the side of his car, which was parked on the north side of Lincoln Avenue, he was justified in assuming that vehicles approaching from the west would not proceed on the north side of the street. Under the circumstances he needed to guard only against traffic coming from the east. Downey was aware of Scherer's presence beside the convertible and most likely knew that an eastbound driver would necessarily have to steer his car toward the center of the street to pass safely. But Lincoln Avenue is 32 feet wide. Six feet were occupied by cars parked along the north curb, six feet by cars parked along the south curb, and another two or three feet by Scherer. This left approximately 17 feet of open roadway. Even allowing for Scherer's presence the street was sufficiently wide for Downey to reasonably conclude that an eastbound driver, properly performing his duty to travel on the right, would pose no threat to his safety.

We conclude that the trial court properly directed a verdict in plaintiffs' favor on the issue of liability.

Affirmed.

---

[2]See, also, Francis v. Anderson, 254 Minn. 341, 95 N. W. (2d) 79; Lee v. Smith, 253 Minn. 401, 92 N. W. (2d) 117; Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49; Spensley v. Oliver Iron Min. Co. 216 Minn. 451, 13 N. W. (2d) 425; Applequist v. Oliver Iron Min. Co. 209 Minn. 230, 296 N. W. 13; Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372; Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404.