Doris A. DUEBELBEIS,
Plaintiff-Appellant,

v.

Michael V. DOHACK,
Defendant-Respondent.

No. 40974.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 24, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 24, 1981.

Application to Transfer Denied
June 8, 1981.

Daniel C. Aubuchon, Aubuchon & Aubuchon, St. Louis, for plaintiff-appellant.

Richard Wuestling and William F. James, Wuestling & James, St. Louis, for defendant-respondent.

STEPHAN, Judge.

This is a wrongful death action brought by the widow of decedent Kenneth Duebelbeis against Michael Dohack. A jury returned a verdict in favor of defendant Dohack and against plaintiff Doris Duebelbeis. Plaintiff appeals. We reverse and remand for a new trial.

■ Plaintiff first contends that the trial court erred by "embellishing and adding its personal interpolation" to MAI 2.01. The reading of the instruction, which covers fifteen pages in the transcript, was interspersed with the court's comments on a variety of topics including, for example, the unique vocabulary of the legal profession, the influence of media on jurors, the purpose of jury buttons and the reasons why objections are made. The practice of this trial judge to offer such comments has previously been disapproved in *State v. Cross*, 594 S.W.2d 609 (Mo. banc 1980), *State v. Ward*, 588 S.W.2d 728 (Mo.App.1979), *Washington v. Sears, Roebuck & Co.*, 585 S.W.2d 137 (Mo.App.1979), and *State v. Behrman*, 613 S.W.2d 666 (Mo.App., 1981). See also *Dorsey v. Robinson*, 600 S.W.2d 59 (Mo. App.1980) where the court found the issue had not been preserved for review. The court in *State v. Cross*, supra, 610, after noting that the trial court's desire to inform the jury of judicial routine was "commendable and understandable," stated that "the delivering, as here, of lengthy oral explanations, talks, comments, chats, homilies or whatever they may be called, invites confusion and disagreement later among the jurors as to exactly what the judge did say and whether his oral remarks prevail over the written instructions or vice versa." The judgment must be reversed and the case remanded for new trial.

Other issues likely to arise on retrial will be discussed.

Plaintiff also contends that the trial court erred in submitting an instruction based on the defendant's theory that the decedent was contributorily negligent in failing to keep a lookout for vehicles approaching behind him. The evidence, viewed in a light most favorable to the defendant and to the submission, *Rickman v. Sauerwein*, 470 S.W.2d 487, 489 (Mo.1971), showed that decedent was walking east, facing traffic, on the north side of Kennerly Road in St. Louis County, Missouri at approximately 7:45 p. m. on November 28, 1975. The road, a two lane thoroughfare, was wet, unlit by artificial street lights and marked with a white center line and white edge lines. It had a slight downhill grade at the accident scene. A "Pass with Care" sign cautioned eastbound motorists. The speed limit was thirty-five miles per hour. There were no shoulders or sidewalks alongside the road. Two to three inches of snow had accumulated on the roadside, and the snow extended onto the road in some places. It was dark and misting. Defendant offered no evidence of the width of the road. Plaintiff's evidence was conflicting, placing the width at sixteen feet or twenty-two feet. Defendant was driving east on Kennerly Road in a 1973 Dodge maxivan with two passengers, his brother and a friend. In order to pass another eastbound automobile traveling thirty miles an hour, defendant pulled into the westbound lane at a speed of thirty-five to forty miles an hour. Immediately before defendant began to pass, the driver of the vehicle being overtaken sighted the decedent on the left edge of the roadway approximately one hundred feet to the east of him. As defendant drew abreast of the vehicle, defendant sighted the decedent at a distance estimated by him on one occasion at seventy-five and on another occasion at fifteen to eighteen feet. Defendant sounded his horn, applied his brakes, and attempted to turn the van to the right. The van skidded and the left front of the vehicle struck the decedent in the back, causing his death. During defendant's efforts to pass the vehicle in front of him and to avoid striking the decedent, the decedent did not look behind him.

The only evidence as to when defendant moved his vehicle into the westbound lane in relation to the time decedent was struck comes from the driver of the vehicle defendant wished to pass. As indicated above, shortly before defendant moved into the westbound lane, decedent was one hundred feet ahead of the vehicle to be passed. Even if defendant is given the full benefit of that distance (although it would be fair to assume that it would be substantially less by the time defendant moved into the westbound lane), all that can be said of the evidence is that it showed that for a period of less than two seconds[1] the decedent failed to inform himself visually by a backward glance of the defendant's approach. We do not believe such evidence supports an instruction submitting decedent's contributory negligence.

While it is true that a pedestrian walking on a highway must exercise ordinary care for his own safety, "it is not as a matter of law the duty of a pedestrian while walking along the traveled part of a highway to turn about constantly and repeatedly to observe the approach of possible vehicles from the rear ..." *McKenna v. Lynch*, 289 Mo. 16, 233 S.W. 175, 176 (1921). See also *Stollhans v. City of St. Louis*, 343 Mo. 467, 121 S.W.2d 808, 810 (1938); *Downey v. Frey*, 269 Minn. 66, 130 N.W.2d 349, 352–353 (1964); *Johnson v. Anoka-Butte Lumber Co.*, 141 Neb. 851, 5 N.W.2d 114, 118 (1942); *Alden v. Coultrip*, 275 Ill.App. 306, 316–317 (1934). That decedent failed for a period of two seconds to look behind him could not, as a matter of law, constitute contributory negligence; and it is axiomatic that the giving of such an instruction would require reversal in the event of a defendant's verdict.

Under this point in defendant's brief, arguments are made to the effect that the illumination of the highway by his low-beam headlights and the sounding of his horn triggered a duty on the part of decedent to learn of the impending danger.

With respect to the illumination, there was no reason for the decedent to assume that its source was anything but a vehicle in the eastbound lane. More importantly, however, such warning as could have been afforded by the lights and the horn are of no avail unless there is evidence that decedent received such stimuli in time to take action to avoid injury. *Robertson v. Grotheer*, 521 S.W.2d 452, 460–461 (Mo.App.1975). There is no such evidence here. Moreover, taking into account the judicially noticed human reaction time of three-fourths of a second as well as defendant's most generous estimate as to when he could first see decedent (seventy-five feet), he would have travelled a distance of approximately forty-four feet before he sounded the horn and a like distance (or slightly less, allowing for his ineffective effort at braking) before decedent could react and get out of defendant's way. Assuming without deciding that the duty to keep a careful lookout referred to in the instruction includes a duty to listen attentively, no degree of auditory attentiveness would have allowed decedent the time to escape. The giving of the instruction was error which, in itself, would warrant reversal.

Plaintiff also contends that the trial court erred in overruling her motion in limine regarding her remarriage, in instructing the jury prior to voir dire regarding her remarriage, and in failing to instruct the jury on the matter at the close of the case. Plaintiff's motion in limine sought to prevent any reference to her remarriage. It suggested that she be called Doris Duebelbeis rather than Doris MacDonald, that she be sworn to testify as Doris Duebelbeis or be sworn outside the presence of the jury, and that her new husband be asked to stand in order that prospective jurors might be asked if they knew him without identifying him as her husband.

The court stated prior to voir dire:

"In this case the Plaintiff has remarried but the fact that she has remarried is to

---

1. At thirty-five miles per hour, a vehicle travels at a rate of 51.33 feet per second; at forty miles per hour, the rate is 58.66 feet per second.

play no role in your determination of the damages, if any, which have accrued in this case. The fact that Plaintiff's remarriage has taken place is completely irrelevant to the jury's determination of damages and you are to pay no attention to the fact that she has remarried. That is not to have any bearing whatsoever in your determination of what damages, if any, to assess in this case for the wrongful death of her husband."

In two Missouri cases the question of the remarriage of decedent's widow in a wrongful death action has been considered. The court in dicta in *Glick v. Allstate Ins. Co.*, 435 S.W.2d 17, 23 (Mo.App.1968) noted, by quoting with approval *Dubil v. Labate*, 52 N.J. 255, 245 A.2d 177 (1968), that withholding evidence of the widow's remarriage would be inconsistent with the integrity of the judicial process. Exclusion of evidence of the remarriage would result in misrepresentation of the truth of the widow's marital status.

In *Salsberry v. Archibald Plumbing & Heating Co. Inc.*, 587 S.W.2d 907, 916–917[18] (Mo.App.1979), the court instructed the jury at the close of the case:

"The plaintiff, Ann E. Salsberry, has remarried and her present name is Conroy. You are instructed that the fact of plaintiff's remarriage is to play no role in your determination of the pecuniary advantage which would have resulted from a continuance of the life of the deceased."

The appellant there claimed the instruction should have been given at the beginning of the case, if at all. The court found it was better procedure to give the instruction with other instructions at the close of the case rather than at the beginning. The court cautioned, however, that its holding should not be read as approval of the instruction. Submission of the instruction simply was not prejudicial error under the circumstances of that case.

■ In her motion in limine, plaintiff sought both to take the oath under her former name, Doris Duebelbeis, and to be referred to by that name throughout the trial. Such procedures would have been inconsistent with the integrity of the judicial process. The court acted properly in overruling those portions of the motion. However, there would have been nothing improper in asking her new husband to stand for identification as long as his name had been given, in order to determine if any jurors knew him. Furthermore, as noted in *Salsberry v. Archibald Plumbing & Heating Co., Inc.*, supra, the better procedure is to instruct the jury at the close of the case rather than prior to voir dire regarding the widow's remarriage. Nevertheless, because the giving or refusal of a cautionary instruction rests in the discretion of the trial court, *Gathright v. Pendegraft*, 433 S.W.2d 299, 312 (Mo.1968), and there is not any prejudice exhibited here by the court's admonition prior to voir dire, no error was committed. The record does not reveal and plaintiff does not delineate how she was prejudiced by the court's failure to instruct on her remarriage at the close of the case. On retrial it would be appropriate under the holding in *Salsberry v. Archibald Plumbing & Heating Co., Inc.*, supra, to submit the instruction or a withdrawal instruction patterned on MAI 34.02 at the close of the case.

■ Plaintiff also contends the trial court erred in sustaining objections to questions concerning decedent's contributions to his children. The court sustained the objections because the children were not named as parties.

Plaintiff's petition, brought pursuant to § 537.080, RSMo 1969, alleged that decedent was the "sole source of support" to plaintiff and their youngest child and also contributed to the support of four other children. Admittedly, none of the children was named as a plaintiff.

It has long been proper to introduce evidence to prove the number and ages of plaintiff's minor children in a wrongful death action on the theory that the decedent father during his life was obligated to support the children. On his death, the widow assumed this obligation. Her pecuniary loss was augmented by this additional burden to support minor children. *Martin*

*v. Sloan,* 377 S.W.2d 252, 265[22] (Mo.1964); *Howard v. Thompson,* 157 S.W.2d 780, 784[11] (Mo.App.1942). Under the law of these cases, evidence regarding plaintiff's one minor child was admissible. Evidence concerning gifts to the adult children was properly excluded.

Other matters raised by plaintiff such as the exclusion of expert testimony concerning decedent's earning capacity may be addressed upon retrial. It is not the function of this court to chart out for any party the course that must be followed in laying the foundation for the admission of opinion evidence. Such an issue rests initially within the discretion of the trial court. *Butcher v. Main,* 426 S.W.2d 356, 359 (Mo.1968). For us to discourse upon the outer limits of that discretion would at this point be premature.

Reversed and remanded.

GUNN, P. J., and SATZ, J., concur.