STATE of Missouri, Respondent,

v.

James K. BETTS, Appellant.

No. 63043.

Supreme Court of Missouri,
Division No. 1.

Aug. 23, 1982.

Motion for Rehearing or Transfer to
Court En Banc Denied Oct. 18, 1982.

Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

BARDGETT, Judge.

Defendant was convicted of capital murder, § 565.001, RSMo 1978, and sentenced to life imprisonment without eligibility for probation or parole for fifty years, § 565.008.1, RSMo 1978. Appellate jurisdiction is in this Court pursuant to Mo. Const. art. V, § 3.

The State's chief witness at trial was Frank Brooks. Brooks had agreed to testify in the case in exchange for reduction of two capital charges against him. His testimony supports the following: On November 24, 1979, Brooks placed a telephone call to the home of Everett Stanfield and spoke with defendant Betts. Brooks then went to Stanfield's home where he met defendant, Stanfield, and Dennis Skillcorn. Shortly thereafter, Brooks left with defendant and Skillcorn for the Hitching Post Tavern in a brown 1967 Ford.

After arriving at the tavern, defendant asked Brooks to go inside and see if Sandra Caswell was there. Brooks went inside, noticed the woman sitting at the bar, and went back outside, reporting her presence to defendant. The three men sat in the car outside the tavern waiting. Skillcorn left approximately one hour later.

About thirty minutes after Skillcorn left, defendant told Brooks that he was going to help defendant kill Sandra Caswell. When Brooks refused, defendant held a rifle on

him and said that if he told anyone, he would be killed. They sat in the car for three more hours, waiting for the woman to leave the tavern so they could abduct and kill her. Defendant wanted to kill Sandra Caswell because she was going to testify against him in a criminal proceeding. Defendant and Stanfield both had been charged for the rape of Sandra Caswell.

The woman left the tavern while the two men were still in the car. Defendant pulled the car around and followed her into an alley. The two men abducted her and put her in the back seat. Defendant drove back to Stanfield's and went into the house leaving Brooks outside with the victim.

Defendant Betts returned to the car carrying a shovel, a stainless steel kitchen knife, and some black plastic trash bags. He got into the back seat of the car; Brooks got out of the front seat of the car, went around to the driver's side, and held the victim while defendant stabbed her in the throat. The two put the victim's body into the trash bags and then left the vicinity.

They drove east on Interstate 70 and pulled off at an exit near Odessa. They pulled into the driveway at the home of David Bellis at approximately 2:00–2:30 a.m. Mr. Bellis, who was just arriving home, followed them and blocked them in. Defendant told Mr. Bellis they were looking for a place to park. Mr. Bellis noticed someone, or something, in the back seat, and let the men leave.

They drove farther east on Interstate 70 and exited in Lafayette County onto a gravel road where there was a bridge over a small creek. Defendant stopped the car in a cornfield and ordered Brooks to grab the victim's body out of the car and threw it down by the creek. Defendant ordered Brooks to go down by the creek and dig a hole. Brooks did so and put the victim's body into the hole, covering it with dirt and leaves. Defendant threw the knife into the creek. They poured ammonia over the grave and left the scene, returning to Stanfield's house.

Other testimony at trial revealed that defendant, Brooks, and Stanfield returned to the grave site the next evening to retrieve the victim's identification, and that the brown 1967 Ford was sold on November 25 by defendant to a salvage dealer. The car was run through a recycling plant.

The victim's body was discovered through Brooks' disclosures. The Medical Examiner determined that Sandra Caswell died of asphyxiation caused by a stab wound to her neck.

Defendant claims the trial court erred: (1) in failing to declare a mistrial because there was an opportunity for improper influence on the jury when the bailiff placed the jurors in the custody of the jury commissioner, who had not been sworn; and (2) in failing to submit MAI–CR 2d 2.10, and to modify the capital murder verdict director with MAI–CR 2d 2.12, because the evidence was that defendant acted with Brooks in killing Sandra Caswell.

I. ·

■ Defendant alleges that the trial court erred in failing to grant a mistrial because the jury had been escorted from the courtroom, down the elevator and to the parking lot, by the jury commissioner who had not been sworn to supervise the jury while the bailiff was locking up the courtroom. This "separation" of the bailiff from the jury lasted approximately five to ten minutes while the bailiff secured the exhibits in the case and locked up the courtroom. Defendant asserts that because an opportunity for improper influence existed after the case had been submitted to the jury and before a verdict had been reached in this case, it is required that his conviction be reversed and the cause remanded for new trial. He submits that this determination is automatically compelled because someone had the opportunity to improperly influence the jury.

Defendant in his brief states he does not challenge the jury commissioner assisting the bailiff in other transportation of the jury. The commissioner drove one group of jurors to their motel that same evening

**606**

while the bailiff drove another group there. Defendant apparently recognizes that such separation was a matter of convenience, if not necessity. Similarly, we find that the bailiff's permission to the jury commissioner, upon the commissioner's suggestion, to take the jury to the parking garage while the bailiff locked up, was a decision based on practical necessities. The reason and purpose of our sequestration rule is to prevent the jurors from being subjected to any improper influences; and there is no evidence or suggestion here that any improper communication occurred. *State v. Daegele,* 302 S.W.2d 20, 25 (Mo.1957). Obviously more than one bailiff should be sworn where it is recognized that more than one person will be needed to escort and supervise a jury. No prejudice occurred. The point is overruled.

### II.

Defendant next contends that the trial court erred in failing to submit MAI–CR 2d 2.10, and to modify the capital murder verdict director with MAI–CR 2d 2.12, because the evidence was that defendant acted with Brooks in killing Sandra Caswell.

■ There was evidence that defendant acted with another, Frank Brooks. Other evidence in defendant's case was that Brooks acted alone. That evidence would seem to require submission of MAI–CR 2d 2.10 and 2.12. However, under Rule 28.-02(e), the prejudicial effect of the failure to give an instruction is to be judicially determined. *State v. Lute,* 608 S.W.2d 381, 383 (Mo. banc 1980); *State v. Graves,* 588 S.W.2d 495, 497 (Mo. banc 1979).

■ Defendant was not prejudiced by the failure to submit MAI–CR 2d 2.10 and 2.12. To the contrary, defendant was actually benefitted by the failure to give MAI–CR 2d 2.10 and 2.12 because the jury could only convict him of capital murder if it found beyond a reasonable doubt that he, not another, had stabbed Sandra Caswell. The State's burden was greater because of the failure to submit MAI–CR 2d 2.10 and 2.12 in that, if the jury had believed that Brooks stabbed the victim, under the in-

structions given, defendant could not have been convicted. No prejudice appears. Defendant's second point is overruled.

The judgment is affirmed.

All concur.