STATE of Missouri, Respondent,

v.

Charles Lee MATHENIA, a/k/a Chuck
Lee Mathenia, Appellant.

No. 66734.

Supreme Court of Missouri,
En Banc.

Jan. 15, 1986.

Rehearing Denied Feb. 18, 1986.

C.J. Larkin, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, Charles Lee Mathenia, was convicted by a jury of two counts of capital murder and sentenced to death in the Circuit Court of Jefferson County. We have exclusive appellate jurisdiction under Mo. Const. art. V, § 3.

The sufficiency of the evidence being uncontested, a brief rendition of the facts is as follows:

Decedents were Daisy Nash, 72, and her mentally impaired sister Louanna Bailey, aged 70. Appellant had lived with Daisy Nash for some seven years prior to her death. At the time of the killings, appellant was 25 years old and still living with Nash.

In September of 1983 appellant allegedly twice raped Louanna Bailey and in December of that year he was charged for those offenses upon her complaint. However, in February Louanna Bailey dropped the charges, indicating she would refuse to testify against appellant. The evidence indicated that the murders were motivated by appellant's resentment at having been arrested and confined in connection with these charges. Appellant vowed to take revenge on the two sisters.

Sometime after midnight on April 24, 1984, appellant returned home after spending the day with his sister and brother-in-law. An argument began with Daisy Nash as soon as he entered the house. During the course of this argument, appellant hit the 72-year-old woman in the face, knocking her to the floor. He then retrieved a butcher knife from the kitchen and after kicking and beating her savagely, he stabbed her several times.

Shortly thereafter, appellant rode his bicycle the two blocks to Louanna Bailey's home and told her he had killed Daisy. While Louanna tried to call Daisy, appellant procured a butcher knife. When he returned, Louanna attempted in vain to flee. Appellant stabbed her fatally in the back.

Appellant was arrested the following day, April 25th, the same day the bodies were found. He made no statement at that time, but gave an extensive video-taped confession on May 7th, against the advice of his counsel.

For the first point of error, appellant contends that the trial court erred in overruling defense objection to the following

colloquy between Prosecutor Reid and Sheriff Asher:

Q. Sheriff, you made the arrest of the defendant on April the 25th, '84, out at his sister's house in Madison County, Missouri?

A. Yes, sir.

Q. And after you arrested him did you advise him of his rights?

A. Yes, sir.

Q. And did he make a statement to you at the time of the arrest?

A. No, sir.

At this point defense counsel objected and moved for a mistrial on the ground that the question and answer were impermissible comment on appellant's exercise of his Fifth Amendment right not to incriminate himself. The court denied the motion and appellant preserved the objection in his motion for new trial.

■ As stated by this Court in *State v. Stuart*, 456 S.W.2d 19, 23 (Mo. banc 1970), "[A]n accused's failure to volunteer an exculpatory statement is not admissible as an admission * * *. The admission of such evidence constitutes an invasion of an accused's constitutional rights." (Citations omitted.) *See also, State v. McLarty*, 467 S.W.2d 58 (Mo.1971). *Stuart* preceded the United States Supreme Court's ruling in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), wherein the Court reasoned as follows:

[I]t does not comport with due process to permit the prosecution during trial to call attention to [an accused's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time * * * an unfavorable inference might be drawn as to the truth of his trial testimony * * *.

426 U.S. at 619, 96 S.Ct. at 2245, quoting *United States v. Hale*, 422 U.S. 171, 182–183, 95 S.Ct. 2133, 2139–40, 45 L.Ed.2d 99 (White, J., concurring). In *State v. Nolan*, 595 S.W.2d 54, 56 (Mo.App.1980), the court delineated the rule as follows: "The state may not use [post-arrest] silence as [1]

affirmative proof or [2] to impeach the defendant's testimony."

■ Our examination of the record in this case does not reveal that this reference to appellant's post-arrest silence was used as "affirmative proof" or "to impeach" the appellant.

The transcript shows that the above-quoted sequence was merely preliminary to the admission into evidence of appellant's video-taped statement. Sheriff Asher's testimony that appellant declined to make a statement at the time of his arrest merely crystalized what was already suggested by the fact that appellant ultimately did make a statement on May 7th.

■ Regarding the impeachment use of appellant's post-arrest silence, we likewise find no reversible error. Although appellant did not put on any evidence, appellant contends that the prosecution attempted to penalize him for his silence when arguing in rebuttal the incredibility of aspects of appellant's video-taped statement. The gist of the prosecution's argument on this matter was that the appellant made a self-serving confession after he had consulted over a period of two weeks with defense counsel and defense investigators. No objection was interposed by defense counsel, so we review for plain error.

We have reviewed the transcript and find that the prosecutor's argument did not result in manifest injustice.

■ Appellant next contends that the trial judge erred in refusing to strike for cause veniremember Middleton because of his statements regarding imposition of the death penalty.

The voir dire proceeded as follows:

VENIREMAN MIDDLETON: I believe in the death penalty for crimes of violence.

MR. HAGER: Would that be for all crimes of violence?

VENIREMAN MIDDLETON: Murders, rapes, some type of brutality.

MR. HAGER: Would it be for any murder in which brutality is involved?

VENIREMAN MIDDLETON: Yes.

MR. HAGER: In other words, if you had a bad murder in which brutality was involved and if you were on the jury and you found the person guilty of capital murder and it was a very brutal murder, what you're telling us is that you would automatically vote for the death penalty; is that correct?

VENIREMAN MIDDLETON: That's correct.

At this point, the prosecution objected out of the jury's hearing to the form of the question in that it failed to test the veniremember's ability to follow the court's instructions on the law and balance mitigating and aggravating circumstances in assessing punishment. A lengthy discussion followed during which the court sustained the objection stating: "I'm going to sustain the objection as to that, the last one. You're going to have to phrase it in terms of following the instructions of the Court." The proceedings then returned to open court where the following ensued:

MR. HAGER: * * * Mr. Middleton, are you telling us that if you would find a person guilty of capital murder, that you would automatically vote for the death penalty?

VENIREMAN MIDDLETON: Yes, sir, I am.

Again the State objected and again the objection was sustained, with the judge amplifying his prior ruling:

If [the prosecutor] comes back and asks him if instructed by the Court to follow certain aggravating circumstances and certain mitigating circumstances and weigh those before they insert the death penalty, but if they would not do that, they'd automatically vote for it, you'd be right. But if you go through and do every one of them like you indicate that you want to do, and he should go back and basically rehabilitate every one of them on following the instructions of the Court in regard to aggravating and mitigating circumstances, could they follow those instructions and if there was brutality involved, vote the death penalty, then basically you would not have made

a sustainable challenge on every one of those, even though you think you've made the one perfect challenge to all of them. They would be rehabilitated. We're going through an exercise with them for nothing.

*    *    *    *    *    *

[I]f they will not follow the instructions of the Court and would vote for it automatically, then you've got your challenges sustained and I would do so. Otherwise, unless it's phrased in that manner, I'm going to sustain the objection to it.

Defense counsel asked no further questions of veniremember Middleton.

Later on, the prosecutor asked the panel the following question:

MR. REID: Okay. Are there any of you who would not be able to follow the Judge's instructions as to the aggravating and mitigating circumstances? The Judge will give you those for you to weigh. And then determine whether or not the death penalty is proper in this case. That's the second phase of the trial. If the defendant is convicted of capital murder in Count One or Count Two, that will be the second phase of the trial. What I'm asking you is, are there any of you who do not feel like that you can follow the Court's instructions as to what the law is in the State of Missouri before you can render the death penalty? I see no hands, Judge. Thank you.

The gravamen of the court's action in sustaining of the prosecution's objection to the form of defense counsel's question was that the question could not yield an intelligent answer. The court indicated repeatedly that the question was improper unless it referred to the ability of the veniremember to consider the court's instructions on aggravating and mitigating circumstances. Veniremember Middleton never indicated that he would impose death *no matter what the court's instructions.* To the contrary, he declined to take such a position when the panel was questioned to that effect by the prosecutor.

[I]t is well established that the trial court has wide discretion in determining the qualifications of a venireman, and its decision thereon will not be disturbed absent a clear abuse of discretion and real probability of injury to the complaining party. *State v. Betts*, 642 S.W.2d 604 (Mo. banc 1982). A clear line cannot be drawn for all cases as to when a challenge for cause should be sustained; there will be instances in which an appellate court might have done differently but cannot say there was an abuse of discretion; each case must be judged on its particular facts; a determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of his demeanor and, considering that observation, an evaluation and interpretation of the answers as they relate to whatever the venireman would be fair and impartial if chosen as a juror. *State v. Cuckovich*, 485 S.W.2d 16, 22–23 (Mo. banc 1972). Because the trial judge is better positioned to make that determination than are we from the cold record, doubts as to the trial court's findings will be resolved in its favor. *State v. Engleman*, 634 S.W.2d [466, 472 (Mo. banc 1982)].

*State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983). We find from the record before us no abuse of discretion.

■ For his third point of error, appellant contends that the trial court erred in striking for cause veniremembers Ledoux and Lamprecht. The strikes are objected to as part of the "death qualification" of the jury. The transcript reveals that there was no ambiguity or equivocation in each veniremember's responses that they could not consider giving the death penalty. Appellant's sole contention, relying on *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985), is that "death qualification" denies a defendant a fair and impartial jury. We have previously declined to follow *Grigsby* and see no need to reconsider. *See State v. Nave*, 694 S.W.2d 729 (Mo. banc 1985), *State v. Malone*, 694 S.W.2d 723 (Mo. banc 1985).

■ Alternatively, appellant argues that excluding veniremembers Ledoux and Lemprecht violated Mo. Const. art. I, § 5. This issue is raised for the first time on appeal.

Mo. Const. art. I, § 5 provides in part:
[N]o person shall, on account of his religious persuasion or belief * * * be disqualified from * * * serving as a juror * * *.

Appellant contends that veniremember Ledoux's statement that she had "a strong belief in not taking another person's life" and veniremember Lamprecht's statement "I'd have to go to confession if I give [sic] a [death] verdict" were religious beliefs for which they were unconstitutionally disqualified from the panel.

The two veniremembers were not disqualified from serving as jurors because of their religious beliefs, but because they demonstrated probable inability or unwillingness to follow the law. The point is without merit.

■ Next, appellant alleges error in the trial court's submission of instructions on non-statutory aggravating circumstances. The essence of appellant's challenge is that this Court should reconsider its holding in *State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982). There we held that the "any * * * aggravating circumstances otherwise authorized by law" language of § 565.012.-1(3), RSMo 1978, permits an instruction drawing the jury's attention to evidence. *Shaw*, 636 S.W.2d at 675. We decline to reconsider *Shaw*. The point is without merit.

■ Appellant also contends that the non-statutory aggravating circumstances "[t]hat Daisy Nash [Louanna Bailey] was a potential witness in a past felony proceeding against the defendant * * * and Daisy Nash [Louanna Bailey] was killed as a result of her involvement as a material witness against the defendant" duplicated the statutory circumstance that "the murder of Daisy Nash [Louanna Bailey] was committed by the defendant for the purpose of preventing Daisy Nash [Louanna Bailey]

from testifying in a judicial proceeding." The former instruction refers to the appellant's revenge motive, while the latter involves his preventing his own subsequent prosecution. We do not believe that drawing the jury's attention to evidence suggesting appellant's revenge motive duplicates the statutory aggravating circumstance instruction. The point is without merit.

■ Finally, appellant challenges the appropriateness of the imposition of the death penalty. Section 565.014.3, RSMo 1978, (repealed effective October 1, 1984) mandates that this Court review the entire record, transcript and report of the trial judge to consider the punishment as well as any errors raised on appeal to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 565.012; and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Appellant does not contend and our review does not reveal that the sentence resulted from passion, prejudice or other arbitrary factor. Appellant does assert that the evidence fails to support the finding of statutory aggravating circumstances and that the sentences are excessive or disproportionate.

The jury was instructed on the following statutory aggravating circumstances:

(1) Whether the murder of [each victim] was outrageously or wantonly vile, horrible or inhuman in that it involved torture or depravity of mind;

(2) Whether the murder of [each victim] was committed by the defendant for the purpose of preventing [each] from testifying in a judicial proceeding.

We have reviewed the entire record and find that the evidence supports both findings. There is no doubt that appellant's savage beating of Daisy Nash supported a finding of the first circumstance as did appellant's "infliction of * * * psychological torture upon [Louanna Bailey] * * * when [she had] a substantial period of time before death to anticipate and reflect on it." *State v. Preston* 673 S.W.2d 1, 11 (Mo. banc 1984), *cert. denied* —— U.S. ——, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984).

Likewise there was sufficient evidence that both Daisy Nash and Louanna Bailey were potential witnesses against appellant for the alleged rapes of Louanna Bailey. The evidence also supported a finding that Louanna Bailey was a potential witness against the appellant in the murder of Daisy Nash.

■ Regarding proportionality, we note that this case involved the brutal murders of two elderly women. The murders were not part of the same criminal transaction, but were separate in time and location. They were planned and committed out of vengeance and to prevent the victims from testifying against appellant.

We have considered the numerous cases cited by appellant where death was not imposed as well as those cases where the death penalty was upheld and we conclude that the death sentences in this case are not excessive or disproportionate. *State v. Battle,* 661 S.W.2d 487 (Mo. banc 1983) (defendant stabbed to death 80-year-old burglary victim), *State v. Foster,* 700 S.W.2d 440 (Mo. banc 1985) (defendant shot to death an acquaintance in the process of robbing him), *State v. LaRette,* 648 S.W.2d 96 (Mo. banc 1983) (defendant stabbed to death 18-year-old girl), *State v. Lashley,* 667 S.W.2d 712 (Mo. banc 1984) (defendant struck with frying pan, then fatally stabbed his 55-year-old cousin, who was his guardian), *State v. Nave,* 694 S.W.2d 729 (Mo. banc 1985) (defendant shot his 55-year-old landlady ten or eleven times), *State v. Preston,* 673 S.W.2d 1 (Mo. banc 1984) (defendant stabbed to death 34-year-old man and at the same time killed a woman; the latter resulted in second degree murder conviction), *State v. Smith,* 649 S.W.2d 417 (Mo.

banc 1983) (defendant beat to death 20-year-old woman).

The judgment is affirmed.

HIGGINS, C.J., BILLINGS and WELLIVER, JJ., and PREWITT, Special Judge, concur.

RENDLEN, J., concurs in result.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

ROBERTSON, J., not sitting.

BLACKMAR, Judge concurring in part and dissenting in part.

The evidence amply supports the judgment of conviction, and I agree that it should be affirmed. The evidence also supports the submission of the death penalty, based on the statutory aggravating circumstances on which instructions were given. The sentence of death, however, should be set aside and the case remanded for a new trial of the punishment phase.

I.

Questions were asked of Juror Middleton, and answers given, (quoted in the principal opinion) which made it crystal clear that he would decree a death sentence if the jury should find the defendant guilty of capital murder. The trial judge did not "sustain" objections until after the questions had been asked and answers given. The trial judge and the prosecution knew the juror's attitude; it was up to one or the other to proceed with rehabilitation to the extent possible. *See State v. Smith,* 649 S.W.2d 417, 427 (Mo. banc 1983). All information available at that point indicated that the juror should be excused for cause.

I cannot discern the slightest flaw in the questions asked. These questions are almost identical to those customarily asked by prosecutors in the course of "Witherspooning" the jury.[1] The prosecutor's ob-

jection really amounts to a claim that the questions asked and the answers given showed the juror's attitude too clearly. A question is not objectionable simply because it shows the need for further inquiry (which was not had here).

The general rehabilitation question was not sufficient. The jurors were simply asked whether they knew of any reason why they could not follow the instructions of the court. Middleton could have followed these instructions to the letter, while still applying his announced predilections. The instructions simply told him that that the jury, after considering the evidence and the aggravating and mitigating circumstances, had perfect discretion to decree death or life with mandatory 50 years. He had already indicated what he would do if presented with this choice.

The fault is aggravated because other jurors were excused under the Witherspoon rule. The jury was purged of those who could not consider the death penalty, while the defense was obliged to use a valuable peremptory challenge to remove the juror who would not consider a life sentence. Both sides should be required to play by the same rules. Middleton simply should not have been tendered as a juror. *Cf. Smith v. State,* 573 S.W.2d 763 (Tex. Crim.App.1977).

II.

The instructions provided the prosecutor with a judicial summary of his argument for a death sentence, by mentioning nonstatutory aggravating circumstances. Instruction # 24 at the penalty phase reads as follows: (Emphasis supplied).

If you find and believe from the evidence beyond a reasonable doubt that one or more of the circumstances submitted in Instruction No. 23 exists and that at least one of them is an aggravating circumstance, it will then become

---

1. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *See State v. Johns,* 679 S.W.2d 253, 264 (Mo. banc 1984); *State v. Battle,* 661 S.W.2d 487, 491 (Mo. banc 1983).

your duty to decide whether a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death as punishment of defendant. In deciding that question you may consider all of the evidence relating to the murder of Daisy Nash.

You may also consider any of the following circumstances if you find from the evidence beyond a reasonable doubt that it exists and that it is an aggravating circumstance:

■ That within approximately six hours after the murder of Daisy Nash, defendant committed a second murder, the victim being Louanna Bailey. *The murders were committed at different locations;*

■ That Daisy Nash was a potential witness in a past felony criminal proceeding against the defendant on charges in Madison County Circuit Court, case number CR283–343FX, and Daisy Nash was killed as a result of her involvement as a material witness against the defendant;

■ *That defendant on April 24, 1984, was a 25 year old male and Daisy Nash was a 72 year old female.*

■ *After the murders of Daisy Nash and Louanna Bailey, the defendant committed additional felonies involving the use or threat of violence to other persons while being held in the custody of the Jefferson County Jail.*

If you do not unanimously find from the evidence beyond a reasonable doubt that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death as defendant's punishment, you must return a verdict fixing his punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

The instruction had effect, as is shown in the jury's verdict, which reads in pertinent part: (Emphasis supplied).

That within approximately six hours prior to the murder of Louanna Bailey, defendant committed another murder, the victim being Daisy Nash. *The murders were committed at different locations.*

That Louanna Bailey was a potential witness in a past felony criminal proceeding against the defendant on charges in Madison County Circuit Court, case number CR 283–343FX, and Louanna Bailey was killed as a result of her involvement as a material witness against the defendant.

*That defendant on April 24, 1984, was a 25 year old male and Louanna Bailey was a 70 [sic] year old female.*

*After the murders of Daisy Nash and Louanna Bailey, the defendant committed additional felonies involving the use or threat of violence to other persons while being held in the custody of the Jefferson County Jail.*

That the murder of Louanna Bailey was committed by the defendant for the purpose of preventing Louanna Bailey from testifying in a judicial proceeding.

The instruction is not inherently prejudicial, and is not unlike those which are frequently given in the federal courts [2] and, no doubt, in other jurisdictions. But Missouri simply does not follow the format in which the trial judge summarizes the contentions of the parties, and our courts shy away from anything which might be considered a comment on the evidence.[3] The same rules should apply in capital cases as in other cases.

The instruction, furthermore, does not follow MAI format.[4] In *State v. Cross*, 594 S.W.2d 609 (Mo. banc 1980) a trial judge

**2.** E. Devitt & C. Blackmar, Federal Jury Practice & Instructions, Vol. I, §§ 10.10 and 13.07 (1977).

**3.** *Duncan v. Pinkston,* 340 S.W.2d 753, 758 (Mo. 1960).

**4.** MAI–CR2d 13.40 and 13.41.

accompanied the reading of MAI–CR 2.01 and 2.02 with a detailed explanation about the jury system. This Court reversed, because of deviation from the format. There are no assertions that the judge had said anything that was misleading or legally erroneous. The refusal was simply because of the form. The holding has been followed in other cases.[5] It should be followed in a capital case.

*State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982), cited in the principal opinion, is not at all in point. It simply holds that the prosecution may introduce evidence of, and may argue, non-statutory aggravating circumstances such as the presence of prior convictions. The case has nothing to do with instructing the jury. It does not justify the court in making or supplementing the prosecutor's argument in its instructions.

The principal opinion stands in stark contrast to *State v. Young*, 701 S.W.2d 429 (Mo. banc 1985), in which the defendant was refused an instruction on a non-statutory mitigating circumstance, and was relegated to argument. The same rule should apply to the prosecution.

Procedural formalities should be strictly followed when the ultimate penalty is sought. Even though the record seems otherwise free of error, and the death sentence is entirely in line with other cases, it should not stand.

---

**5.** *State v. Harvey*, 625 S.W.2d 198 (Mo.App. 1981); *Duebelbeis v. Dohack*, 615 S.W.2d 488 (Mo.App.1981); *State v. Behrman*, 613 S.W.2d 666 (Mo.App.1981); *State v. Baker*, 595 S.W.2d 801 (Mo.App.1980).