**Chuck Lee MATHENIA, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 53254.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 3, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1988.

Application to Transfer Denied
July 26, 1988.

Donald J. Hager, Public Defender, Farmington, for appellant.

John W. Reid, II, Pros. Atty., Madison County, Fredericktown, for respondent.

CARL R. GAERTNER, Judge.

Defendant was convicted on two counts of capital murder, § 565.001 RSMo.1979 (repealed L.1983, S.B. 276, p. 922), and received two death sentences. The Missouri Supreme Court denied the direct appeal of these convictions and sentences. *State v. Mathenia,* 702 S.W.2d 840 (Mo.banc 1986). Defendant then filed a pro se 27.26 motion. Appointed counsel later filed an amended and a second amended 27.26 motion which incorporated the pro se motion and set forth additional allegations of error. The state moved for summary judgment and

this motion was granted. Defendant appeals, claiming that the motion court erred because: (1) Defendant's claim of ineffective assistance of counsel based on counsel's failure to attempt to suppress defendant's videotaped confession required an evidentiary hearing; (2) Defendant's claim of ineffective assistance of counsel based on counsel's failure to properly investigate and present evidence of defendant's mental capacity required an evidentiary hearing; (3) The trial court applied an unconstitutional interpretation of the death penalty statute; (4) Defendant's claim of ineffective assistance of counsel based on counsel's failure to object to use of an allegedly unwarranted statutory aggravating circumstance required an evidentiary hearing. We affirm.

■ The third and fourth points which defendant asserts in this appeal relate to the aggravating circumstances instruction submitted to the jury during the penalty phase of the trial. The Supreme Court approved this instruction on defendant's direct appeal. *Mathenia,* 702 S.W.2d at 844–45. An issue considered on direct appeal cannot be re-litigated in a post-conviction proceeding under Rule 27.26, even though a different theory is suggested. *Bannister v. State,* 726 S.W.2d 821, 830 (Mo.App. 1987). Moreover, since the Supreme Court found no fault with the instruction, we can scarcely fault counsel for failing to make a non-meritorious objection. *Shaw v. State,* 686 S.W.2d 513, 516 (Mo.App.1985).

■ In his first point, defendant claims he was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel based upon the failure of his trial attorney to file a motion to suppress defendant's statements. In reviewing a claim of ineffective assistance, we are instructed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Sanders v. State,* 738 S.W.2d 856, 857 (Mo.banc 1987), to deny the claim if defendant fails to plead and prove either deficient performance of counsel or resultant preju-

dice. In discussing the proof required to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. We find no such probability regarding the failure of defendant's trial counsel to file a motion to suppress his statements.

In ruling upon the state's motion for summary judgment, the motion court had before it the original and amended Rule 27.26 motions sworn to by defendant, the transcript of the trial and pre-trial proceedings, and reports of psychiatric examinations. The evidence considered in the light most favorable to the defendant fails "to undermine confidence in the outcome." In order to show prejudice, as defined in *Strickland,* from failure to file a motion to suppress, defendant would have to establish that such a motion would have at least a possibility of success and that the exclusion of his statements from evidence would have a reasonable probability of altering the outcome of the trial.

Defendant was arrested on April 25, 1984, and given Miranda warnings. He made no statement at that time. On Saturday, May 5, 1984, he advised a deputy sheriff he wished to talk to him. Because a lawyer had been appointed to represent defendant, the sheriff refused to permit him to make a statement at that time. On Monday, May 7, defendant spoke with his attorney by telephone, then told the sheriff his lawyer had advised him not to make a statement but he wanted to do so anyway. Only then did the sheriff take the videotaped confession. This evidence, that defendant initiated the subject, persisted over a two-day period in his wish to make a statement, and insisted upon doing so against the advice of counsel, stands in contrast to the purely conclusory allegations that the confession was "forced out

of me" and resulted from "inherently coercive surroundings." Such allegations of mere conclusions, unsupported by any facts, do not merit an evidentiary hearing. *Thomas v. State*, 736 S.W.2d 518, 519 (Mo. App.1987); *Seltzer v. State*, 714 S.W.2d 727, 728–29 (Mo.App.1986). Equally insufficient is defendant's allegation that his confession was forced by "things done to me" by a fellow inmate. "Coercive police activity" is the necessary predicate to finding that a confession is not voluntary, *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986), not "pressures to confess emanating from sources other than official coercion," *Oregon v. Elstad*, 470 U.S. 298, 304–305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222, 229 (1985).

Moreover, in addition to defendant's videotaped confession, the evidence established that defendant had admitted to four persons not connected with law enforcement that he had committed both murders. Physical evidence, bloodstained clothing and bloody shoe prints, also implicated defendant. The videotaped confession is cumulative to and corroborative of this evidence, of the photographic evidence of the murder scenes, and of the medical testimony describing the victims' injuries. Review of the record in its entirety reveals no reasonable probability that the outcome of the trial would have been different had counsel suppressed the videotaped confession.

Defendant's remaining point on appeal asserts error in granting the state's motion for summary judgment and denying an evidentiary hearing with regard to three charges of ineffective assistance of counsel:

A) Counsel was ineffective in not requesting that appellant's competency be tested and in not investigating possible defenses based on mental disease or defect;

B) Counsel was ineffective for failing to present evidence which would support a finding that appellant lacked the requisite mental state to commit first degree murder;

C) Counsel was ineffective for failing to present an adequate defense during the penalty phase in that he failed to interview or call as witnesses, Gary Brinkley, Dorothy Stevens, or Harold Mathenia.

The pertinent allegations of defendant's pro se motion are:

9(a) My attorney did not call as witnesses my aunt, Dot Stephens, or my brother, Harold Mathenia, who would have testified to my problems growing up and my problems until I was put in jail. He did not call Preacher Gary Brinkley, who would have testified to my problems and to my character.

9(c) My attorney did not ask that my mental competency be tested before trial, or that the judge find me incompetent.

These allegations are incorporated by reference in the amended 27.26 motions which appointed counsel filed, however nothing was added to the pro se allegations, except a suggestion that Gary Brinkley would testify "to child abuse" and to "special problems of the petitioner."

Absent a recitation of the anticipated testimony of the alleged defense witnesses and their availability to be called as witnesses at the trial, the charge of ineffective assistance of counsel based upon a failure to call witnesses does not merit an evidentiary hearing. *Sprous v. State*, 726 S.W.2d 427, 428 (Mo.App.1987). Moreover, during the penalty phase of the trial, counsel produced detailed evidence regarding physical and psychological abuse which defendant's aunt, Dot Stephens, inflicted upon him and concerning his learning disability problems in school. There is no indication that the proposed testimony would have been anything but cumulative.

Defendant's pro se charge of ineffectiveness based upon his trial counsel's failure to request a test and a judicial determination of his mental competency, incorporated in, but unchanged by, the amended motions, likewise does not war-

rant an evidentiary hearing. In ruling upon the state's motion for summary judgment, the court had the record of the trial showing that trial counsel had arranged for Dr. Gary Bassett, a psychiatrist, to examine defendant approximately one month before the trial. The court also reviewed the report of a psychiatrist who had examined defendant at the state hospital in Farmington eleven months before the trial in connection with another offense. This report concluded that defendant did not have a mental disease or defect as defined in § 552.010, RSMo.1986, and that he was capable of understanding the proceedings and assisting counsel in his defense. Neither the allegations of the pro se motion, nor the penalty phase testimony of Dr. Bassett show any factual basis for the charge of ineffective assistance of counsel for failure to challenge defendant's competency.

■ The final point on appeal charges ineffective assistance of counsel in failing to present evidence that would support a finding that defendant lacked the requisite mental state to commit capital murder. The state correctly contends that this issue was not included among the allegations of the pro se or the amended motions. However, despite the inadequacy of the pleadings, the motion court considered the issue and made a specific finding that defendant "used the defense of diminished mental capacity." This finding is not supported by the record. No defense evidence was introduced during the guilt phase of the trial. During the penalty phase, Dr. Basset's testimony that defendant was mildly mentally retarded was introduced in mitigation. Defendant's argument is predicated upon trial counsel's failure to use the evidence relating to defendant's mental condition during the guilt phase of the trial for the purpose, at least, of disputing the issue of deliberation. The foundation for this contention is found in the record of a prior criminal proceeding against the defendant. The murder victims, Daisy Nash, age 72, and Louanna Bailey, age 70, were sisters. De-

fendant had from time to time lived with each of them, and they had befriended him. Daisy Nash managed defendant's monthly social security payments, received for disability due to his mental retardation. In September 1983, he was charged with two attempts to rape Louanna Bailey. While awaiting trial on these charges, he was sent to the Farmington State Hospital for a court ordered mental examination. The hospital records show a diagnosis of episodic alcohol abuse, phase of life problem, and borderline intellectual functioning. The records also contain the report of Dr. Vicioso, a psychiatrist, which concludes that defendant does not have a mental illness or defect as defined by statute, that he is capable of understanding the proceedings and assisting counsel, and that, "[i]n my opinion, the accused at the moment of the alleged offense, perhaps, was incapable of understanding the nature, quality, and wrongfulness of his act." Subsequently, Louanna Bailey refused to cooperate with the prosecution of the attempted rape charges; they were dismissed and defendant was released on February 2, 1984. Dorothy Nash and Louanna Bailey were murdered less than three months later.

Defendant's argument assumes that Dr. Vicioso's speculation regarding defendant's mental ability at the time of the attempted rapes refers to a chronic condition. The report, read in its entirety, dispels this assumption. The doctor's statement that defendant was, perhaps, incapable of understanding the nature, quality, and wrongfulness of the attempted rapes is obviously predicated upon the expressed comment that:

Mr. Mathenia is described as an individual with borderline intelligence endowment who is emotionally and sexually immature, having a strong desire for nuturance [sic] and affection from others, who for the last few years had been finding that person in whom he sees a mother, a friend, and a confidant. Unfortunately, his drinking problem is not solved; and, perhaps, under the action of the alcohol, he may have the potentiality

to be easily led by others and to have a strong decrease of his inhibitions and emotions. One can speculate that perhaps under the action of alcohol many things can occur, as a result of a childish expression of sexuality coupled with a desire for affection and nuturance [sic].

Thus, the doctor's speculation regarding defendant's mental state at the time of the attempted rapes of a "person in whom he sees a mother, a friend, and a confidant," does not translate into a continuing mental defect affecting his capacity to understand the wrongfulness of beating, stomping, and stabbing two elderly women.

The record discloses no information available to trial counsel affecting defendant's mental capacity at the time of the murders other than mental retardation evidenced by a low I.Q. The Supreme Court has held that low I.Q. is insufficient to serve as the basis for a defense of diminished mental capacity. *State v. Gilmore,* 681 S.W.2d 934, 940 (Mo. banc 1984). In view of this decision, we can hardly fault trial counsel for limiting his use of the psyciatric testimony to mitigation when the psychiatrist who examined defendant before trial at counsel's request testified only to mild mental retardation based upon a low I.Q.

In *Sanders v. State,* 738 S.W.2d at 858, the Missouri Supreme Court instructed us to examine the reasonableness of defense counsel's actions in the light of the Supreme Court's admonition in *Strickland v. Washington,* supra, "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. For this reason, the *Sanders* court concludes, "there is a strong presumption that the attorney's conduct was proper." *Sanders,* supra, at 858. We have before us, as did the motion court, all of the information regarding defendant's mental capacity that was available to his trial counsel. Nothing therein suggests any action or investigation, beyond the pre-trial

psychiatric examination by Dr. Bassett, which counsel might have undertaken and which could reasonably have been expected to change the outcome of the trial. Neither in the motions nor in his appellate brief does defendant suggest that an evidentiary hearing would disclose any pertinent facts in addition to those available to counsel at the time of trial. Defendant has failed to allege any facts which, if true, would overcome the presumption of proper conduct by his trial attorney. Since we are to evaluate counsel's conduct from his perspective at the time, the defendant was not prejudiced by the denial of an evidentiary hearing on his motion.

Judgment affirmed.

SATZ, C.J., and SIMEONE, J., concur.