STATE of Missouri, Respondent,

v.

Amron W. JACKSON, Appellant.

Amron W. JACKSON, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 49244, WD 51006.

Missouri Court of Appeals,
Western District.

May 28, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 2, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Robert G. Duncan, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, C.J., P.J., and SPINDEN and ELLIS, JJ.

FENNER, Chief Judge.

Appellant, Amron W. Jackson, appeals his conviction and sentence of murder in the second degree as well as the denial, after evidentiary hearing, of his Rule 29.15 motion for post-conviction relief.

Considered in the light most favorable to the judgment herein, the record reflects that on February 9, 1993, Ronzell Johnson, Mike Sanders and Carlas Mosby were riding in Sanders' automobile. As they drove by, this group saw appellant in front of a house at 5110 Wabash, Kansas City, Missouri. Sanders was driving and he knew there were hard feelings between appellant and Mosby.

As Sanders drove by, appellant stepped into the street. Sanders stopped and backed up toward appellant. Ronzell Johnson saw appellant pull a gun from his pocket. Sanders got out of the car and approached appellant. Sanders opened his shirt and turned around to exhibit that he was not armed. Sanders began to talk to appellant about the feud between appellant and Mosby. Johnson got out of the car and stood by the rear on the passenger side. Finally, Mosby got out of the car and spoke to appellant. Appellant "flinched" his gun and Sanders stepped in between them. Mosby, who was unarmed, began walking back to Sanders' car and appellant began shooting at Mosby's back.

Johnson heard appellant say, "I got you, I got your bitch ass." Johnson took off running and saw appellant reloading his gun. Johnson returned to the scene several minutes later and observed Mosby's body lying up against the car. Appellant argued at trial that he shot Mosby in self-defense.

## MOTION TO REMAND— NEW EVIDENCE

■ Appellant argues first that he is entitled to have his case remanded to the trial court in order to present evidence on the question of whether the State failed to disclose a promise of leniency to Ronzell Johnson in exchange for his testimony against appellant. Appellant argues that he discovered new evidence which establishes that Johnson was lying when he testified at trial that he had not been offered a "deal" by the State in exchange for his testimony. Appellant argues that the State's failure to disclose its "deal" with Johnson together with the State knowingly using Johnson's false testimony that there was no "deal" or failing to correct Johnson's testimony in this regard, which was known to be false, violated appellant's right to due process.

■ Rule 29.11(b), V.A.M.R., requires that a motion for a new trial shall be filed within 15 days after the return of the verdict, and allows the court to extend the time period to a maximum of 25 days. *State v. Davis,* 698 S.W.2d 600, 602 (Mo.App.1985). The time limitations apply equally to all grounds for a motion for new trial, including newly discovered evidence. *State v. Turnbough,* 604 S.W.2d 742, 745 (Mo.App.1980). Even as an amendment, a request for a new trial based upon newly discovered evidence must comply with the time requirements of Rule 29.11(b) and, if untimely, is a nullity and presents nothing for review. *State v. Hamilton,* 732 S.W.2d 553, 555 (Mo.App.1987).

■ An exception to the time limitations of Rule 29.11(b) is recognized where an appellate court, in its discretion, determines that its inherent power must be exercised to remand a case for the trial court to consider whether a new trial should be granted on the basis of newly discovered evidence in order to prevent a miscarriage of justice. *State v. Davis,* 698 S.W.2d at 603. The case at bar does not present such a circumstance.

In the case at bar, appellant raised the same issue in regard to leniency being offered to Johnson in his amended Rule 29.15 motion. At the Rule 29.15 hearing, appellant's attorney explained that she had spoken with the assistant prosecutor who allegedly made the deal with Johnson and she was told that Johnson had not been given any inducements for his testimony. Furthermore, neither Johnson nor his attorney were called as witnesses to offer evidence of the alleged deal. Appellant argues that Johnson was not willing to testify about the inducements that he was given until after his probation had expired which came after the 29.15 hearing. This does not constitute new evidence.

By appellant's allegation in his 29.15 motion, he exhibits that he was aware that Johnson had purportedly been offered inducements. Being aware of the purported newly discovered evidence at the time of his 29.15 hearing, appellant had full opportunity to present this issue at that time. Justice does not require remand to the trial court for consideration of this issue once again.

## RULE 29.15 MOTION

Appellant argues next that the judgment of the court in his 29.15 motion should be reversed and remanded because the motion court failed to enter adequate and specific findings of fact and conclusions of law in regard to his claims that his attorney (1) failed to investigate the evidence in Sanders' car; (2) failed to secure the testimony of Gus Johnican; (3) failed to object to the testimony of Dr. Matruka as being hearsay, which testimony denied him his right to confrontation; (4) failed to object to a video statement of Johnson being received in evidence as improperly bolstering his testimony; and (5) that the State failed to disclose inducements to Ronzell Johnson for his testimony and failed to correct the false testimony of Johnson that there were no inducements. Appellant argues further that the judgment of the motion court should be reversed for failing to find ineffective assistance of trial counsel for counsel failing to investigate evidence of weapon damage to Sanders' car and in failing to object to the testimony of Dr. Matruka.

Specific findings are generally contemplated and required by Rule 29.15. *State v. Gabbard,* 913 S.W.2d 362, 364–65 (Mo.App. 1996). However, generalized findings and conclusions will be deemed adequate if they are sufficient to provide meaningful review on appeal. *Darris v. State,* 897 S.W.2d 48, 51 (Mo.App.1995). Furthermore, findings of fact are not required regarding issues that present only matters of law. *Barry v. State,* 850 S.W.2d 348, 350 (Mo. banc 1993). Nor are findings of fact or conclusions of law required on issues upon which no evidence was adduced at the post-conviction hearing, *State v. Dunn,* 889 S.W.2d 65, 76 (Mo.App. 1994), or upon issues which were not "properly raised" or are not cognizable in a post-conviction motion. *State v. Viviano,* 882 S.W.2d 748, 754 (Mo.App.1994).

Substantive appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law issued by the hearing court are "clearly erroneous." *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995); Rule 29.15(j), V.A.M.R. Findings and conclusions are "clearly erroneous" only if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Johnson, id.*

In order to prevail on a claim of ineffective assistance of counsel, a movant must establish, by a preponderance of the evidence, (1) that his or her attorney's performance was deficient, *i.e.,* that he or she failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that this deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Prejudice exists only where trial counsel's acts or omissions are outcome-determinative. *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc), *cert. denied,* — U.S. —, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The movant must show "a reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

The motion court herein entered its amended findings of fact and conclusions of law on May 16, 1995. Each of appellant's claims are addressed as follows:

### (1) Failure to Investigate Sanders' Car

Appellant argues that the findings of the motion court were inadequate in regard to his claim of ineffective assistance of counsel for counsel's failure to obtain and use photographs showing that Mike Sanders' car had bullet holes as well as damage from a shotgun. In a separate point, appellant argues that the motion court erred in failing to grant post-conviction relief because of this alleged ineffective assistance of counsel.

Appellant argues that the evidence of damage to Sanders' car from bullets and shotgun

pellets would have shown that he was not the only person with a gun when Mosby was shot. The detective in charge of the photographs in question testified that they were either lost or destroyed and that no further processing was done on the car to determine the caliber of the bullets that caused the damage to Sanders' car.

In this regard, the motion court specifically found that if the evidence in regard to Sanders' car was in fact relevant, appellant could have requested that the car be reprocessed before trial. By its findings, the motion court did not believe that appellant had requested that the car be reprocessed. Nonetheless, the evidence at trial was that the bullets used by appellant were of a type that leave a shotgun pellet pattern when they strike a solid object. The motion court further found that appellant failed to establish how counsel's conduct did not conform to the care and skill of a reasonably competent attorney.

■■ Even if appellant could have established that someone else shot at Sanders' car with a shotgun, such evidence would not have aided his claim of self-defense. Appellant based his claim of self-defense on the argument that Mosby was armed with a pistol and that Mosby shot at him first before he opened fire on Mosby inflicting fatal wounds. Appellant fails to establish how the result of his trial would have been different even if counsel could have shown that someone shot at Sanders' car with a shotgun.

Appellant's argument that the findings of the motion court were inadequate in regard to the weapon damage to Sanders' car is denied as is his argument that counsel was ineffective for failing to investigate said damage.

### (2) Testimony of Gus Johnican

■■ Appellant argued before the motion court that counsel was ineffective in failing to secure the testimony of Gus Johnican, which testimony would have tended to exculpate him. Gus Johnican did not testify at the motion hearing. Johnican did testify at appellant's sentencing hearing where he stated that there was no way appellant or his attorneys could have located him before trial.

In regard to this claim, the motion court found that for counsel to be ineffective for failing to call witnesses, it must be shown that counsel was provided with the names and addresses of the witnesses, that they were available to testify, and that their testimony would have been helpful. *McAlester v. State*, 658 S.W.2d 90 (Mo.App.1983). The motion court found that appellant had "failed to make the necessary showing" as required under *McAlester*. This finding allows for adequate review.

Appellant's argument that this finding was inadequate is denied.

### (3) Testimony of Dr. Matruka

Appellant argued that counsel was ineffective for failing to object to hearsay testimony of Dr. Matruka, the admission of which testimony denied him of his "right to confrontation." Appellant argues further in a separate point that the motion court erred by failing to grant post-conviction relief for ineffective assistance of counsel because of counsel's failure to object to the hearsay testimony of Dr. Matruka in regard the autopsy report prepared by Dr. Overman.

■■ Dr. Matruka testified to the results of the autopsy performed by Dr. Overman on the victim. The motion court found that any failure to object to Dr. Matruka's testimony was a matter of trial strategy. The motion court's finding provides an adequate basis of review and is therefore sufficient.

■■ Dr. Matruka testified that he assumed Dr. Overman's duties at the Jackson County Medical Examiner's office when Dr. Overman left to go into private practice. An exception to the hearsay rule is that business records, if properly identified, may be admitted in evidence. Dr. Overman's autopsy report could have clearly been admitted as a business record. *State v. Weaver*, 912 S.W.2d 499, 517 (Mo. banc 1995). Any objection by counsel could have been overcome by the State establishing a foundation for the admission of Dr. Overman's report as a business record. This clearly could have been a matter of trial strategy where counsel chose

not to interpose an objection that could have readily been overcome. Reasonable trial strategy will not support an ineffective assistance of counsel claim. *Harris*, 870 S.W.2d at 814. Counsel's failure to object did not constitute ineffective assistance.

#### (4) Video Statement of Johnson

 Appellant argued that he was denied effective assistance of counsel by counsel's failure to object to a video statement by Ronzell Johnson being received in evidence. Appellant argued that the video statement improperly bolstered Johnson's testimony. Once again, the motion court made a general finding that the failure of counsel to object was a matter of trial strategy. It is not unreasonable trial strategy for counsel to not object to evidence when no prejudice is discerned. In the case at bar, our review of the record does not show that appellant was prejudiced by the admission of Johnson's video statement.

The motion court's finding of trial strategy provides a basis for review and is not inadequate.

#### (5) Inducements to Ronzell Johnson

 Appellant argued that counsel was ineffective for failing to investigate inducements to Ronzell Johnson from the State in exchange for his testimony. In regard to this claim, the motion court found that appellant failed to present evidence to establish that counsel's conduct failed to conform to the care and skill of a reasonably competent attorney and, further, that appellant suffered prejudice.

The only evidence offered at the motion hearing by appellant in regard to alleged inducements to Johnson established that Johnson was on probation on June 18, 1990, for a period of four years; that Johnson was alleged to have violated his probation on two occasions, one prior to the crime for which appellant was convicted herein, and once after said crime. Appellant established that Johnson was continued on probation on both occasions. Appellant offered further evidence that after the crime for which appellant was convicted herein, Johnson was charged with receiving stolen property,

which charge was dismissed while appellant's case was pending. Appellant can only speculate from the fact that Johnson's probation was not revoked and that a charge against Johnson was dismissed that some "deal" was made. There was no evidence to support this allegation and the motion court was not required to engage in speculation.

The findings of the motion court in regard to the allegation of inducements to Ronzell Johnson were not inadequate to provide review on appeal. Appellant's arguments of error by the motion court are denied.

### DIRECT APPEAL

Appellant's arguments on direct appeal are that the trial court erred in (1) rejecting his *Batson* challenge to the State's removal of an African–American woman from the jury, (2) allowing the State to cross-examine him in regard to his flight from the scene, (3) allowing the State to cross-examine him in regard to his alleged assault on Stephan Phillips, and (4) not allowing appellant to cross-examine Stephan Phillips in regard to Phillips' previous criminal misconduct.

#### *Batson* Challenge

 The Equal Protection Clause prohibits both the State as well as the defendant in a criminal case from using their peremptory challenges in such a manner as to discriminate on the basis of race or gender. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

 Under procedural guidelines established by the Missouri Supreme Court in *State v. Parker*, 836 S.W.2d 930, 939–940 (Mo. banc), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), if a party's use of a peremptory strike is challenged in a timely fashion on the ground that that party has engaged in race discrimination in connection with the use of its strikes, that party is obligated to give a valid race-neutral explanation for its strike, regardless of whether there exists a *prima facie* case of race discrimination. *State v. Gray*, 887 S.W.2d 369,

384 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). At this stage of the process, the explanations need only be facially race-neutral; unless a discriminatory intent is inherent in the explanations, they will be deemed race-neutral. *Purkett v. Elem*, —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).

■■■ If the prosecutor articulates race-neutral reasons, the burden shifts back to the defendant to show that the State's proffered reasons were merely pretextual and, in fact, racially motivated. *Parker*, 836 S.W.2d at 934. If the defendant makes such a showing, it is then up to the trial court to decide whether the defendant has proved purposeful racial discrimination. *Purkett v. Elem*, —— U.S. at —— – ——, 115 S.Ct. at 1770–1771. If the defendant fails to challenge the State's explanation in the trial court, he may not challenge the State's explanation on appeal. *State v. Fritz*, 913 S.W.2d 941, 946 (Mo.App.1996).

■■■ In the case at bar, the prosecution's reason for striking the African–American woman in question was that she had failed to answer a single question during the lengthy *voir dire* examination. It is clear that a venireperson's failure to respond to questions during *voir dire* constitutes a legitimate, race-neutral reason for striking that venireperson. *State v. Martin*, 892 S.W.2d 348, 353 (Mo.App.1995). That is especially true where, as here, the only other white juror similarly situated, *i.e.*, who also failed to answer any questions during *voir dire*, also was removed by the State through the use of a peremptory challenge. *See Martin*, 892 S.W.2d at 353 (defendant failed to meet burden that State's explanation for striking black venireperson was pretextual, even though prosecution *failed* to strike one white juror who also was silent during *voir dire*).

■■■ After the State offered its explanation for removing the woman in question, the appellant did not challenge the State's explanation. The appellant's attorney did not ask that the State's strike be disallowed or show how the State's reason for striking the woman in question was racially motivated. Rather, he merely argued that the court should

"quash the jury" and requested that the court call a "new panel."

Since the appellant made no effort to challenge the State's explanation, he may not do so for the first time on appeal, and the issue has been waived. *Fritz*, 913 S.W.2d at 946.

Appellant's *Batson* challenge is denied.

### Flight from the Scene

■■■ Appellant argues that the trial court erred by allowing the State to cross-examine him in regard to his having fled the scene of the crime. Appellant argues that this violated his right to remain silent.

■■■ The trial court is allowed broad discretion in deciding the permissible scope and extent of cross-examination and an appellate court reviews only for an abuse of discretion. *State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995). Any matters within the "fair purview" of the defendant's direct examination, including collateral issues, may be inquired into on cross-examination. *Gray*, 887 S.W.2d at 386.

In the present case, the appellant testified on direct examination that he fired at the victim, Carlas Mosby, only because Mosby fired at least two shots at him. Then, he said, he turned and ran away.

On cross-examination, the appellant was questioned regarding his flight from the scene; the assistant prosecutor asked him why, if he had shot Mosby in self-defense, he didn't remain at the scene and tell the police that his actions were justified. The assistant prosecutor suggested that if the appellant's version of the incident was correct, he would have had a motive to "stay there and to clear [him]self," or at least return to the scene once the danger had passed.

The appellant now argues, as he did at trial, that this line of questioning was improper because it violated his Fifth Amendment right to remain silent, and that he was under no duty to speak with the police. In support of his argument, the appellant cites *State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. banc), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986), and *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970),

which contain language to the effect that an "accused's failure to volunteer an exculpatory statement is not admissible as an admission."

Neither of these cases are controlling here. In *Stuart,* the defendant was under arrest and the court stated that "the silence of an accused *while under arrest* is not admissible against him because he is under no duty to speak." *Stuart,* 456 S.W.2d at 22 (emphasis added). *Mathenia* was likewise a case involving *post-arrest* silence. 702 S.W.2d at 842.

■ In the present case, of course, the State did not violate appellant's right to remain silent because the questions regarding the appellant's flight, and his failure to remain at the scene and cooperate with the police investigation, did not relate to his *post-arrest* silence, but rather to his *pre-arrest* flight. A defendant's flight is admissible as tending to demonstrate a consciousness of guilt. *State v. Schwartz,* 899 S.W.2d 140, 145 (Mo.App.1995).

Point denied.

### Stephan Phillips

Stephan Phillips appeared as a witness for the State at appellant's trial. Phillips testified that appellant admitted to him that he had killed Carlas Mosby. Phillips testified that appellant told him that Mosby "didn't die like a man," that he "squealed" while being shot and begged appellant to stop shooting him. Phillips said that appellant told him that he just "pumped" Mosby up, explaining that pumped means shot.

■ Appellant argues first that the trial court erred by allowing the State to cross-examine appellant concerning his alleged assault on Stephan Phillips. Under the same point, appellant argues that the motion court erred by denying his Rule 29.15 claim that counsel was ineffective by failing to object to cross-examination concerning his alleged assault on Stephan Phillips.

During cross-examination, appellant denied that he told Phillips that he "pumped [Mosby] up" and testified that he saw Phillips for the first time the previous day. The prosecutor then asked appellant if it were not true that approximately a month after the shooting of Mosby appellant saw and shot at Stephan Phillips and his family. Appellant denied having seen or shot at Phillips at which point defense counsel objected and requested a mistrial. The objection was denied as being untimely.

■ Generally, the State is prohibited from cross-examining a defendant in regard to prior criminal acts which have not resulted in either a guilty plea or a conviction if the cross-examination is "technically purely collateral" and relates only to the defendant's "general credibility." *State v. Humphrey,* 723 S.W.2d 427, 430 (Mo.App.1986). However, in the court's discretion, a defendant may be questioned about specific acts of misconduct to discredit his veracity, regardless of whether those acts resulted in conviction. *State v. Collier,* 892 S.W.2d 686, 690 (Mo. App.1994).

■ In the case at bar, appellant's cross-examination was not purely collateral. Appellant denied having seen Phillips prior to trial and the State was entitled to challenge that testimony. Furthermore, threats or physical assaults on witnesses for the State are relevant as tending to show a consciousness of guilt. *State v. Frey,* 897 S.W.2d 25, 29 (Mo.App.1995).

Appellant's argument of trial court error in allowing the State to cross-examine him concerning his alleged assault on Stephan Phillips is denied.

Appellant's argument of ineffective assistance of counsel is that since the trial court found his objection to have been untimely, counsel was ineffective for not making a timely objection. This argument is without merit. Since this line of inquiry was proper, counsel was not ineffective for failing to object. Point denied.

■ Appellant's final argument is that the trial court committed plain error by sustaining the State's objection and prohibiting defense counsel from asking Phillips during cross-examination the following two questions: "How many occasions have you sold cocaine" and "Mr. Phillips on occasion have you stolen things."

The scope of cross-examination concerning matters that may bear on a witness's credibility are largely within the discretion of the trial court. *State v. Dunn,* 817 S.W.2d 241, 245 (Mo. banc 1991), *cert. denied,* 503 U.S. 992, 112 S.Ct. 1689, 118 L.Ed.2d 403 (1992). Furthermore, it is not error for a trial judge to exclude offers of impeachment relating to immaterial or collateral matters. *State v. Taylor,* 486 S.W.2d 239, 244 (Mo.1972). Phillips admitted on direct examination that he had served penitentiary time for selling cocaine. The number of times that Phillips sold cocaine or stole things are collateral matters. The trial court did not abuse its discretion by sustaining the State's objection to these questions.

The judgments of the trial court and the motion court are affirmed.

All concur.